Wesley M. Griffith, SBN 286390
**ALMEIDA LAW GROUP LLC**
3550 Watt Ave, Suite 140
Sacramento, CA 95821
Telephone: 530-490-3178
E-mail: wes@almeidalawgroup.com

Christopher Nienhaus, *pro hac vice* to be filed
**ALMEIDA LAW GROUP LLC**
849 W. Webster Ave
Chicago, IL 60614
Telephone: 708-529-5418
E-mail: chris@almeidalawgroup.com

*Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN FRANKS, JACK BACIGALUPI, individually and on behalf of others similarly situated,<br><br>                 Plaintiffs,<br><br>vs.<br><br>SIDEPRIZE LLC d/b/a PRIZEPICKS, AND DOES 1-20,<br><br>                 Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR EQUITABLE MONETARY AND INJUNCTIVE RELIEF**<br><br>**Jury Trial Demanded** |

-1-

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## I.    **INTRODUCTION**

1.      For years, Defendant SidePrize LLC d/b/a PrizePicks ("PrizePicks"), has been operating mobile gambling applications and websites within California (collectively, the "Gambling Websites"), representing to customers and the public that its daily fantasy sports contests, such as "Pick 'Em," are legal forms of gambling in California. They are not.

2.      Plaintiffs Justin Franks and Jack Bacigalupi (together "Plaintiffs"), on behalf of themselves and the proposed class of similarly situated Californians, bring this lawsuit to stop the unlawful gambling that occurs on PrizePicks' Gambling Websites in California and to recover the money that PrizePicks has unlawfully taken from them.

## II.    **PARTIES**

**A.    Plaintiffs.**

3.      At all times relevant to this action, Plaintiff Justin Franks was over the age of 18 and was a resident of San Francisco, California.

4.      At all times relevant to this action, Plaintiff Jack Bacigalupi was over the age of 18 and was a resident of San Francisco, California.

**B.    Defendants.**

5.      Defendant SidePrize LLC d/b/a PrizePicks is a Georgia Limited Liability Corporation with its headquarters in Atlanta, Georgia. According to its website, "PrizePicks [is] the largest daily fantasy sports operator in North America."[1]

6.      PrizePicks regularly conducts business within California and this District, including by running the Gambling Websites that are the subject of this litigation.

7.      On information and belief, Does 1-20 are individuals and/or entities who facilitate PrizePicks' unlawful practices described in this Complaint. The identities of Does 1-20 are not presently known to Plaintiffs. The Doe defendants, along with defendant PrizePicks, are collectively referred to in this Complaint as "Defendants."

---

[1] https://www.prizepicks.com/press-news/prizepicks-teams-up-with-the-san-francisco-giants-as-official-daily-fantasy-sports-partner (last visited June 10, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

8.    Plaintiffs expressly reserve their right to amend this Complaint to add the Doe defendants by name, once their identities are known.

### III.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there exists minimal diversity between class members and Defendants and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10.    The United States District Court for the Northern District of California has personal jurisdiction over the parties in this matter because Plaintiff Franks resides in San Francisco County and Plaintiff Bacigalupi also resides in San Francisco County.  PrizePicks regularly conducts business within this District, including by engaging in the unlawful gambling practices that are at the center of this action.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) because Plaintiff Franks resides in San Francisco County and Plaintiff Bacigalupi also resides in San Francisco County, and PrizePicks' unlawful actions, which are the subject of this action, occurred in San Francisco County, among other locations within California.

12.    Pursuant to California Civil Code Section 1780(d), a declaration from Plaintiff Bacigalupi is attached as **Exhibit A** confirming that venue is proper.

### IV.    DIVISIONAL ASSIGNMENT

13.    Pursuant to Local Rules 3.2(c) and 3.5(b), Plaintiffs further state that assignment to the San Francisco and Oakland Division of this Court is proper because Plaintiff Franks resides in San Francisco County and Plaintiff Bacigalupi also resides in San Francisco County, and many of the events at issue in this lawsuit occurred in San Francisco County, which pursuant to Local Rule 3-2(d) provides for assignment to this Division.

/ / /

/ / /

/ / /

## V.    **FACTUAL ALLEGATIONS**

A.    **California's Longstanding Ban on Gambling.**

14.    For over 150 years, California has broadly prohibited commercialized gambling.

15.    For example, in 1872, California enacted Penal Code Section 330, which provides in relevant part that "[e]very person who . . . conducts, either as owner or employee . . . *any banking or percentage game* played with . . . *any device*, for money, checks, credit, or other representative of value . . . is guilty of a misdemeanor." CAL. PENAL CODE § 330 (emphasis added).

16.    A "banking game" refers to a situation where the "house" is a participant in the game, taking on all contestants, paying all winners, and collecting from all losers. *See Sullivan v. Fox,* 189 Cal. App. 3d 673, 678 (1987). And a "percentage game" refers to a situation where the house collects a portion of the bets or wagers made by contestants, but is not directly involved in game play. *See id. at* 679.

17.    Similarly, California Penal Code Section 337a prohibits additional conduct, including:

- "*Pool selling* or *bookmaking*, with or without writing, at *any time or place*." CAL. PENAL CODE § 337a(a)(1) (emphasis added).

- "*[R]eceiv[ing], hold[ing], or forward[ing]* . . . in *any manner whatsoever*, any *money . . . staked, pledged, bet or wagered*, or to be staked, pledged, bet or wagered, or offered for the purpose of being staked, pledged, bet or wagered, *upon the result*, or purported result, *of any* trial, or purported trial, or *contest*, or purported contest, of skill, speed or power of endurance of *person* or animal, or between *persons*, animals, or *mechanical apparatus*, or *upon the result, or purported result, of any* lot, chance, casualty, *unknown or contingent event whatsoever.*" *Id.* at (a)(3) (emphasis added).

- "[A]t *any time or place, record[ing], or register[ing] any bet* or bets, *wager* or wagers, *upon the result*, or purported result, *of any* trial, or purported trial, or *contest*, or purported contest, of *skill*, speed or power of endurance *of person* or animal, or *between persons*, animals, or *mechanical apparatus*, or upon the

-4-

result, or purported result, *of any* lot, chance, casualty, *unknown or contingent event whatsoever.*" *Id.* at (a)(4) (emphasis added).

- "*[O]ffer[ing] or accept[ing] any bet* or bets, or *wager* or wagers, *upon the result*, or purported result, *of any* trial, or purported trial, or *contest*, or purported contest, of skill, speed or power of endurance *of person* or animal, or *between persons*, animals, or *mechanical apparatus*." *Id.* at (a)(6) (emphasis added).

18.    The terms used in Section 337a have their commonsense meanings. For example, the California Court of Appeal has explained that "'[p]ool selling' is the selling or distribution of shares or chances in a wagering pool," such as when money wagered by all participants is combined into a single pool and the winnings are distributed based on predetermined rules. *See Finster v. Keller,* 18 Cal. App. 3d 836, 846 (1971) (cleaned up). And "'[b]ookmaking' is the making of a betting book and includes the taking of bets, [and] [t]he taking of one bet is sufficient" to constitute "bookmaking." *People v. Thompson*, 206 Cal. App. 2d 734, 739 (1962) (cleaned up).

19.    Similarly, "bet" and "wager" have their commonsense meanings. For example, the Judicial Council of California Criminal Jury Instructions (2025 Edition) provides that a "bet is a wager or agreement between two or more people that if an uncertain future event happens, the loser will pay money to the winner or give the winner something of value. A bet includes a wager made on the outcome of any actual or purported event, including but not limited to any kind of sporting contest."  CALCRIM No. 2993, Receiving or Holding Bets (CAL. PENAL CODE § 337a(a)(3)) (cleaned up).[2]

20.    "Bets" and "wagers" include entry fees paid in online fantasy sports. *Los Angeles Turf Club v. Horse Racing Labs, LLC,* 2017 WL 11634526, at *8 (C.D. Cal. May 15, 2017).

21.    Put simply, a company violates California Penal Code Section 337a when it engages in pool selling, bookmaking, or accepts or records any bets or wagers on the result of any contest

---

[2] Available online at https://www.justia.com/criminal/docs/calcrim/2900/2993/ (last visited June 10, 2025).

and/or any unknown or contingent event whatsoever—including, without limitation, bets associated with the performance of persons, such as in fantasy sports.[3]

22.    Moreover, various sections of the California Penal Code prohibit "lotteries" and "games of chance."

23.    For example, Penal Code Sections 320 and 321 make the operation of a lottery unlawful: "Every person who contrives, prepares, sets up, proposes, or draws any lottery, is guilty of a misdemeanor"[4] and "[e]very person who sells, gives, or in any manner whatever, furnishes or transfers to or for any other person any ticket, chance, share, or interest, or any paper, certificate, or instrument purporting or understood to be or to represent any ticket, chance, share, or interest in, or depending upon the event of any lottery, is guilty of a misdemeanor."[5] Penal Code Section 319 defines a lottery broadly to include "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known." CAL. PENAL CODE § 319.

24.    Similarly, Penal Code Section 330a makes it unlawful to own or operate any "contrivance, appliance, or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded . . . [that] is won or lost . . . dependent upon hazard or chance." CAL. PENAL CODE § 330a.

25.    And Penal Code Section 337j makes it unlawful to operate a "game of chance" or to "receive, directly or indirectly, any compensation" for operating such a game "*without having*

---

[3] While Section 337a violations are reduced to infractions in certain circumstances for non-commercial gambling in amounts below $2,500, the Section 337a reductions expressly do "not apply to . . . [a]ny bet, bets, wager, wagers, or betting pool or pools made online." CAL. PENAL CODE § 336.9(b)(1).

[4] CAL. PENAL CODE § 320.

[5] CAL. PENAL CODE § 321.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

*first procured . . . all federal, state, and local licenses required by law.*" CAL. PENAL CODE § 337j. (emphasis added).

26.    In fact, as the California legislature re-affirmed in 2008, "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

**B.    Supermajorities of the California Electorate Rejected the Gambling Industry's Attempts to Legalize Sports Betting in 2022.**

27.    In 2022, two ballot initiatives were put to the California voters to legalize certain additional forms of gambling in the state, including various forms of sports betting: Proposition 26 and Proposition 27.

28.    **Proposition 26** was primarily sponsored by California's Native American tribes, and, among other things, would have:

- Legalized in-person sports betting at tribal casinos.
- Allowed additional gambling at tribal casinos, including roulette and dice games like craps.
- Established certain taxes and fees associated with sports betting.

29.    Proposition 26, however, was soundly rejected in November 2022, with approximately 67% of the California electorate voting "no."

30.    **Proposition 27** aimed to legalize online sports betting in California, and was primarily sponsored by the online sports betting industry, with the Washington Post reporting that "the industry ultimately spent $150 million on political ads"[6] in an attempt to legalize online gambling in California.

31.    Among other things, Proposition 27 would have:

- Legalized and regulated online sports betting in California.

---

[6] Gus Garcia-Roberts, *Inside the $400 million fight to control California sports betting,* WASH. POST (Nov. 3, 2022), https://www.washingtonpost.com/sports/2022/11/03/prop-26-27-california-sports-betting/ (last visited June 10, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

- Established a new division within the California Department of Justice to set license requirements and oversee the industry.

- Imposed a 10% tax on sports betting revenue and established licensing fees.

- Allocated revenue from online gambling to homelessness prevention.

32.    Proposition 27 was also soundly rejected in November 2022, with 82% of the electorate voting "no," making it one of the largest margins of defeat in California ballot proposition history.

**C.    California's Ongoing Investigation into Daily Fantasy Sports Betting.**

33.    Despite the resounding defeats at the ballot box, online sports betting operators, like PrizePicks, have continued to operate in California.

34.    In particular, "daily fantasy sports" betting has proliferated in the state.

35.    Daily fantasy sports, which are often referred to by the abbreviation "DFS," are a subset of fantasy sports games that are generally played online through gambling websites:

> As with traditional fantasy sports games, [in daily fantasy sports], players compete against others by building a team of professional athletes from a particular league or competition while remaining under a salary cap, and earn points based on the actual statistical performance of the players in real-world competitions.
>
> Daily fantasy sports are an accelerated variant of traditional fantasy sports that are conducted over short-term periods, such as a week or single day of competition, as opposed to those that are played across an entire season.
>
> Daily fantasy sports are typically structured in the form of paid competitions typically referred to as a "contest"; winners receive a share of a pre-determined pot funded by their entry fees. A portion of entry fee payments go to the provider as rake revenue.[7]

36.    According to the California Business Journal, "California residents are estimated to contribute as much as 10% of the total entries in DFS contests nationwide. This popularity has

---

[7]    *Daily    Fantasy    Sports,*    Wikipedia,    available    online    at https://en.wikipedia.org/wiki/Daily_fantasy_sports#cite_ref-sg-dk500k_1-0 (last visited June 10, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

translated into substantial revenue, with DFS platforms raking in approximately $200 million in entry fees annually [in California]."[8]

37.    In response to these massive ongoing daily fantasy sports betting operations in California, on or about October 5, 2023, State Senator Scott Wilk wrote to the California Department of Justice and requested an investigation into daily fantasy sports betting:

> I write to request a legal opinion as to whether California law prohibits the offering and operation of daily fantasy sports betting platforms with players physically located within the State of California, regardless of whether the operators and associated technology are located within or outside of the State.
>
> Pursuant to California law, no one may operate "any game of chance" without the required federal, state, and local licenses. No one has "the right to operate a gambling enterprise except as may be expressly permitted by the laws of this state and by the ordinances of local governmental bodies."
>
> In 2022, California voters overwhelmingly rejected Proposition 27 to legalize online sports wagering. Although sports wagering in all forms remains illegal in California, online daily fantasy sports betting is proliferating throughout the state. Through these online platforms, a participant pays to enter a contest in which they may win a prize depending on how well athletes perform. Although the participant may utilize their knowledge of a particular sport in choosing their "team" of players, how well those players perform during a game is completely out of the participant's control. As such, *daily fantasy sports appears to be a game of chance not otherwise permitted by the laws of California.*

(Cleaned up; footnotes omitted; emphasis added).[9]

/ / /

/ / /

/ / /

---

[8] *Unfenced Playground: A Peek into California's Daily Fantasy Sports Landscape, California Business Journal,* available online at https://calbizjournal.com/unfenced-playground-a-peek-into-californias-daily-fantasy-sports-landscape/#:~:text=In%20fact%2C%20California%20residents%20are,million%20in%20entry%20fees%20annually (last visited June 10, 2025).

[9] A copy of the letter is publicly available online at https://www.legalsportsreport.com/wp-content/uploads/2023/11/OU-23-1001-Sen.-Wilk-request-1.pdf (last visited June 10, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

38.    Consistent with the Senator's request, the California Department of Justice directed the Attorney General's Opinion Unit to address the following question:

> Does California law prohibit the offering and operation of daily fantasy sports betting platforms with players physically located within the State of California, regardless of whether the operators and associated technology are located within or outside of the State?

Opinion Request No. 23-1001.[10]

39.    Online sports betting operators, including PrizePicks, are well aware of the pending opinion, having submitted materials to the Attorney General's Office arguing for the supposed legality of the practices. Many other entities, including Native American Tribes, have submitted materials to the Attorney General's office showing the unlawful nature of the practices.

40.    As of the time of the filing of this lawsuit, no opinion has been issued from the Attorney General's Office.[11]

**D.    PrizePicks' California Fantasy Sports Gambling Operations.**

41.    PrizePicks has been operating in California for years through the Gambling Websites, which consist of at least the PrizePicks mobile apps for Android and IOS and the PrizePicks website, PrizePicks.com, and associated subpages. The primary gambling product that PrizePicks currently offers in California is "Pick 'Em," which PrizePicks describes as a form of daily fantasy sports, even though the contests are played entirely against the "house" (i.e., PrizePicks) and not against other users of the Gambling Websites. PrizePicks represents to its customers that "Pick 'Em" is legal in the state. It is not.

/ / /

/ / /

/ / /

---

[10] Available online at https://oag.ca.gov/opinions/monthly-report (last visited June 10, 2025).

[11] Plaintiffs' counsel have "subscribed" to the Legal Opinions of the Attorney General Monthly Opinion Report and understand that they will receive an email notification once an opinion issues. Plaintiffs' counsel will promptly notify the Court regarding any relevant updates they receive.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.      **What Is PrizePicks and "Pick 'Em"?**

42.      PrizePicks features a landing page on its website captioned, "What is PrizePicks?"[12] There, PrizePicks explains that "PrizePicks is daily fantasy made easy. It's just you against the numbers. Members predict more or less on between 2 and 6 player squares of their choice. The more picks they correctly predict, the more money they win! Payouts on PrizePicks can be as high as 25X!:"

## What is PrizePicks?

When people hear the words "daily fantasy sports," they think of drafting lineups, salary caps, and competing against thousands of other players, including sharks, all for the slim chance to win a small piece of the pie.

PrizePicks is daily fantasy made easy. It's just you against the numbers. Members predict more or less on between 2 and 6 player squares of their choice. The more picks they correctly predict, the more money they win! Payouts on PrizePicks can be as high as 25X!

Not a member yet? Sign up for PrizePicks using promo code "PrizePlay" for $50 instantly when you play your first $5 lineup!

Take a look at today's board and pick your favorite plays!

43.      PrizePicks goes on to provide a step-by-step guide on how to gamble with it:

## How to Play PrizePicks

PrizePicks is the easiest way to play daily fantasy. Getting started is very simple -  You sign up for an account and then deposit a minimum of $10. Then:

1. Pick between 2-and-6 player squares. You can pick from a wide variety of sports and stat-types, and even mix and match different sports in one lineup!

2. Pick more or less on each player square you pick.

3. Choose Flex Play or Power Play. Power Plays have higher payouts, but all your picks must win. Flex Plays are the safer option, giving you a chance to win even if one or two of your picks lose.

4. Choose your entry fee. The minimum entry fee is $1. You'll be able to see how much your lineup would payout.

5. Submit your lineup and sweat it in real-time! If your picks turn green, you're winning!

Check out this in-depth guide on how to play PrizePicks to start building your bankroll instantly!

/ / /

/ / /

/ / /

---

[12] https://www.prizepicks.com/resources/what-is-prizepicks-how-to-play-promo-code (last visited June 10, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

44.    If the user follows the link to the "in-depth guide"[13] on how to play Pick 'Em, PrizePicks elaborates that after setting up an account that the user chooses the 2-6 players and statistics to bet on:



45.    From there, the user is directed to "pick more or less" on each player—in other words select the "over" or the "under" on the statistical line:

46.    The statistical line is set by PrizePicks, not any user.

47.    Next, the user is directed to "pick flex or power play" and is provided explanations of what each is:

---

[13] https://www.prizepicks.com/resources/how-to-play-prizepicks (last visited June 10, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

48.     If the user chooses to learn more about the two contest types, he[14] can navigate to the "PrizePicks Payouts | How Payouts on PrizePicks Work" landing page, [15] where he will learn that the contest results and payment amounts are based entirely on a pre-set formula set by PrizePicks and not based on the results of any other fantasy user's performance:



/ / /

/ / /

/ / /

---

[14]  Men make up more than 2/3 of sports bettors in the United States. *See* https://bircheshealth.com/resources/sports-betting-demographics-in-the-u-s (last visited June 10, 2025).

[15]  https://www.prizepicks.com/resources/prizepicks-payouts (last visited June 10, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

49. Finally, returning to the step-by-step guide, the user is told to choose the amount to bet, submit the bet to PrizePicks, and await the results:



50. Here are step-by-step examples of a Pick 'Em transactions conducted from a desktop computer on PrizePicks.com and then from the PrizePicks app.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1                **a.**       **A Sample Desktop Pick 'Em Transaction.**

2         51.     Here is a step-by-step example of a Pick 'Em transaction conducted from a desktop

3 computer.

4         52.    **First,** the user selects the sporting types (e.g., MLB, NBA, WNBA) and statistic

5 types to bet on:



53.    **Second,** the user selects specific athletes, and whether to bet "more" (the "over") or "less" (the "under") on each athlete's performance. Here the user has selected the NBA as the sport, decided to bet on the category of "total points," and then selected the "over" on Myles Turner, the "under" on T.J. McConnell, and the "over" on Luguentz Dort:



CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

54.     The statistical line for each player that the user is betting the "over" or "under" on is determined by PrizePicks, not the user.

55.     **Third,** the user chooses whether to play "Flex Play" or "Power Play." It is only after the wager amount is selected that the user is informed of the potential winnings. Here are two examples, one reflecting a potential bet of $20 on Flex Play resulting in potential winnings of $60, and the second reflecting a wager of $20 on Power Play resulting in potential winnings of $85:




/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

56.    **Fourth,** if the user completes the wager, he has a chance to win based on the betting line and terms set by PrizePicks. He has no ability to change or modify the outcome of the Pick 'Em contest once his bet is placed, and other PrizePicks' users' performances do not have any impact on the outcome of the contest. Only the athletes' actual performances in the selected statistical category (i.e., at the live sporting event) determine the outcome of the Pick 'Em contest.

57.    **Finally**, after the underlying sports competitions resolve, PrizePicks uses its records (i.e., its betting book) to determine the winners and losers and make payments to winners from its funds (i.e., from the "house" or "bank").

58.    Ultimately, regardless of which Pick 'Em sporting event type PrizePicks customers select, the specific athletes' "overs" and "unders" chosen, or the amounts bet, the customers have no control over the outcome of the contest they have wagered on. The outcome is determined entirely based on athletes' actual in-game performances (i.e., the athletes' performance in the actual underlying sporting events) and are entirely outside of the customers' control.

59.    Put simply, the outcomes of the Pick 'Em contests are contingent and unknown at the time the bets and wagers are collected and recorded (i.e., booked) by PrizePicks. And as a result, PrizePicks' Pick 'Em contests violate California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j.[16]

/ / /

/ / /

/ / /

---

[16] Plaintiffs note that they are specifically authorized by Federal Rule of Civil Procedure Rule 8(d)(2) to make their allegations in the alternative, and accordingly, allege that the gambling contests offered in California by PrizePicks constitute games of "chance' for purposes of those Penal Code Sections that prohibit lotteries and/or other games of chance, and constitute games of skill, to the extent skill is found to be a necessary element of certain claims made under Penal Code Section 337a or otherwise.

**b.    A Sample PrizePicks App Pick 'Em Transaction.**

60.    The process on the mobile apps is substantively identical.

61.    **First,** the user selects the sporting types (e.g., MLB, NBA, WNBA) and statistic types to bet on. Here the user has selected the MLB and "pitcher strikeouts" and "hitter fantasy score:"



/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

62.    **Second,** the user selects specific athletes, and whether to bet the "over" or "under" on each athlete. Here the user has selected the "over" on Max Fried, the "over" on Pete Alonso, and the "under" for MacKenzie Gore.



63.    The statistical line for each player that the user is betting the "over" or "under" on is determined by PrizePicks, not the user.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

64.    **Third,** the user chooses how much to bet, and whether to bet on "Flex Play" or "Power Play." It is only after the wager amount is selected that the user is informed of the potential winnings. Here are two examples, one reflecting a wager of $20.00 resulting in potential winnings of $50.00 under "Flex Play" and the second reflecting a bet of $20.00 resulting in potential winnings of $50.00 under "Power Play".

 

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

65.      **Fourth,** if the user completes the wager, he has a chance to win based on the betting line and terms set by PrizePicks. He has no ability to change or modify the outcome of the contest once his bet is placed, and other users' performances do not have any impact on the outcome of the contest. Only the athletes' actual performances in the selected statistical category (i.e., at the live sporting event) determine the outcome of the Pick 'Em contest.

66.      **Finally**, after the underlying sports competitions resolve, PrizePicks uses its records (i.e., its betting book) to determine the winners and losers and make payments to winners from its funds (i.e., from the "bank").

67.      Ultimately, regardless of which Pick 'Em sporting event type PrizePicks customers select, the specific athletes' "overs" and "unders" chosen, or the amounts bet, the customers have no control over the outcome of the contest they have wagered on. The outcome is determined entirely based on athletes' actual in-game performances (i.e., the athletes' performance in the actual underlying sporting events) and are entirely outside of the customers' control.

68.      Put simply, the outcomes of the Pick 'Em contests are contingent and unknown at the time the bets and wagers are collected and recorded (i.e., booked) by PrizePicks. And as a result, PrizePicks' Pick 'Em contests violate California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j.[17]

**2.      PrizePicks Illegal Pick 'Em Contests Differ Significantly from Traditional Fantasy Sports.**

69.      Traditional fantasy sports were played between friends and family over the course of a sports season, for small amounts of collectively pooled money or for no money at all.

70.      PrizePicks Pick 'Em product is not a true fantasy game in any regard because PrizePicks sets the lines for the "overs" and "unders" on each statistic that is bet upon by the users,

---

[17] Plaintiffs note that they are specifically authorized by Federal Rule of Civil Procedure Rule 8(d)(2) to make their allegations in the alternative, and accordingly, allege that the gambling contests offered in California by PrizePicks constitute games of "chance' for purposes of those Penal Code Sections that prohibit lotteries and/or other games of chance, and constitute games of skill, to the extent skill is found to be a necessary element of certain claims made under Penal Code Section 337a or otherwise.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

and the users play against PrizePicks (the "house") and not other users for an opportunity to win PrizePicks' money.

71.     Here are several other examples of critical differences of how Pick 'Em differs from traditional fantasy sports.

72.     **First,** unlike traditional fantasy sports that are played between friends and family, PrizePicks Pick 'Em sets up contests between the users and PrizePicks—who serves as the house—through its Gambling Websites.

73.     **Second,** unlike traditional fantasy sports, in Pick 'Em, PrizePicks collects, documents (i.e., books), and holds all bets and wagers, and then PrizePicks uses its records (i.e., PrizePicks' betting book) to determine winners and losers and to calculate payouts.

74.     **Third,** unlike traditional fantasy sports, in Pick 'Em, PrizePicks serves as the "house," taking on all contestants, paying all winners, and collecting from all losers.

75.     **Fourth,** unlike traditional fantasy sports, in Pick 'Em, the "over" and "under" lines are all set by PrizePicks, just as in a traditional sports book betting gambling operation.

76.     **Fifth,** unlike traditional fantasy sports, Pick 'Em has the effect of creating a "parlay" structure, where a user has to correctly select multiple independent outcomes in order to win his bet against PrizePicks.

77.     **Sixth,** unlike traditional fantasy sports, which generally last throughout an entire sports season (e.g., the NFL regular football season), daily fantasy sports such as Pick 'Em, generally involve short periods of participation and are designed to entice multiple rounds of repeat betting over the course of a day, a weekend, or a week.[18]

78.     **Finally,** unlike traditional fantasy sports, in Pick 'Em, PrizePicks offers users the opportunity to enter contests across a multitude of sporting types at the same time. For example, in

---

[18] In fact, the sports betting industry is facing lawsuits across the country related to the addictive nature of their online betting platforms. While those claims are not at issue in this lawsuit, the California legislature has also expressly noted the addictive nature of gambling: "Gambling can become addictive and is not an activity to be promoted or legitimized as entertainment for children and families." Cal. Bus. & Prof. Code § 19801(c).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

June 2025, PrizePicks offered contests on MLB, the WNBA, the NBA, NHL, Tennis, Soccer, the PGA, NFL, MMA, Darts, and Cricket, among others, on the Gambling Websites in California.

79.    Ultimately, regardless of which Pick 'Em sporting event type PrizePicks' customers select, the specific athletes' "overs" and "unders" chosen, or the amounts bet, the customers have no control over the outcome of the contest they have wagered on. The outcome is determined entirely based on athletes' actual in-game performances (i.e., the athletes' performance in the actual underlying sporting events) and are entirely outside of the customers' control.

80.    Put simply, the outcomes of the Pick 'Em contests are contingent and unknown at the time the bets and wagers are collected and recorded (i.e., booked) by PrizePicks. And as a result, PrizePicks' Pick 'Em contests violate California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j.[19]

**3.    PrizePicks Solicits California Users Through a Comprehensive Advertising Campaign that Is Specifically Directed at California Consumers.**

81.    Online fantasy sports bet operators spend billions of dollars each year on advertising and marketing,[20] with MediaRadar reporting that PrizePicks alone spends over $100 million a year.[21]

82.    The reason PrizePicks spends over $100 million each year on advertisements and marketing is to expand and maintain its userbase, including within California, which is the largest daily fantasy market in the country.

---

[19] Plaintiffs note that they are specifically authorized by Federal Rule of Civil Procedure Rule 8(d)(2) to make their allegations in the alternative, and accordingly, allege that the gambling contests offered in California by PrizePicks constitute games of "chance' for purposes of those Penal Code Sections that prohibit lotteries and/or other games of chance, and constitute games of skill, to the extent skill is found to be a necessary element of certain claims made under Penal Code Section 337a or otherwise.

[20] *How Much Sportsbooks Spend on Marketing (2025 Updated Stats!),* available online at https://www.scaleo.io/blog/how-much-sportsbooks-spend-on-marketing-2024-updated-stats/ (last visited June 10, 2025)

[21] *https://www.mediaradar.com/blog/blog/q4-2023-12-for-24-gambling* (last visited June 10, 2025)

-23-

83.     Examples of PrizePicks' advertising and marketing tactics within California include sponsorship of established California sports teams. For example, PrizePicks prominently features on its website that it is an official partner of the San Franscisco Giants and the San Diego Padres:





84.     PrizePicks issued a press statement on April 24, 2025 regarding the partnership with the San Francisco Giants,[22] which among other things stated that:

> As part of the multi-year partnership, *PrizePicks branding will be showcased prominently throughout Oracle Park* with rotating signage behind home plate and LED signage on each baseline.
>
> PrizePicks logos will be featured across the K-Counter in right field, creating an interactive experience for fans in the ballpark.
>
> Fans seated on top of the right field wall near the strikeout counter will have the opportunity to flip over the PrizePicks branded signs, revealing a "K" for each strikeout earned by a Giants pitcher.
>
> When Giants pitchers combine for 12 strikeouts in a home game, fans can participate in a text-to-enter promotion with the chance to win a $12,000 free PrizePicks lineup and tickets to a future Giants game at Oracle Park.

(Emphasis and paragraph breaks added.)

---

[22] https://www.prizepicks.com/press-news/prizepicks-teams-up-with-the-san-francisco-giants-as-official-daily-fantasy-sports-partner (last visited June 10, 2025).

85.    In short, according to the press statement, all attendees of Giants games in San Francisco, California will now be "prominently" subjected to PrizePicks' gambling solicitations.

86.    PrizePicks also put out a similar press release regarding the San Diego Padres, including similar in-stadium sponsorship at the Padres' California stadium, that will lead all attendees of those games in California to be subject to PrizePicks' gambling solicitations.[23]

87.    PrizePicks also runs extensive traditional TV advertisements featuring celebrities and promotional offers to attract new customers, with many of those ads run in California and explicitly identifying the availability of PrizePicks in California:[24]



---

[23]    https://www.prizepicks.com/press-news/prizepicks-announces-official-partnership-with-san-diego-padres#:~:text=PrizePicks%20Announces%20Official%20Partnership%20with%20San%20Diego%20Padres,-April%2023%2C%202025&text=SAN%20DIEGO%20(April%2023%2C%202025,Official%20Daily%20Fantasy%20Sports%20Partner (last visited June 10, 2025).

[24]    For example, PrizePicks ran a TV ad during the 2025 NFL playoffs featuring Rubi Rose that also included a specific portion of the ad identifying the availability of PrizePicks in California. Available online at, https://www.youtube.com/watch?v=q0wJ2oLNNXI (last visited June 10, 2025); see also https://www.youtube.com/@PrizePicks (last visited June 10, 2025) (PrizePicks official YouTube account where video content is posted, including commercials).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

88.    PrizePicks also engages in digital advertising, including social media advertising, to target specific demographics and interests. Among other things, many of those ads are specifically directed at Californians.

89.    For example, here are screenshots of a California specific video ad for PrizePicks on Instagram,[25] that begins with the speaker stating "California PrizePicks is now available in your state," before going on to advertise PrizePicks' Pick 'Em product and offering bonus signups to California users:

  

/ / /

/ / /

/ / /

---

[25]The advertisement appeared at https://www.instagram.com/p/DIwOMS0gEVu/?igsh=NjZiM2M3MzIxNA== (last accessed June 6, 2025; as of June 10, 2025, the URL was no longer working).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

90.     PrizePicks also uses new user bonuses, deposit matches, and referral programs, among other tactics, to incentivize sign-ups. Those bonuses include California-user-specific bonuses:



91.     Put simply, PrizePicks has a comprehensive marketing and customer solicitation strategy, that includes soliciting new and existing customers to use PrizePicks in California.

/ / /

/ / /

/ / /

-27-

**4.     Once Potential Customers Arrive on the PrizePicks Gambling Websites, They Are Repeatedly Assured that PrizePicks Is Properly Operating in California.**

92.     Well aware that customers would otherwise refuse to play its daily fantasy sports contests if they knew and understood those contests violated California criminal law, on its website, PrizePicks repeatedly assures prospective customers that daily fantasy sports generally and PrizePicks specifically are permitted in California.

93.     For example, on the main PrizePicks landing page, PrizePicks.com, one of the first images a user encounters is a map showing where PrizePicks is available, which includes California:[26]



/ / /

/ / /

---

[26] The image is in contrast to other gambling products offered by PrizePicks, which it states are not available to California users, as discussed in Paragraphs 103 to 110, below.

94.     Similarly, if the user navigates to a tab on the main landing page that reads "Where to play DFS," he is taken a similar landing page,[27] which once again represents that PrizePicks is available in California:



/ / /

/ / /

/ / /

_____

[27] https://www.prizepicks.com/resources/states-where-you-can-play-prizepicks (last visited June 10, 2025)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

95.     Below the map, PrizePicks states that "PrizePicks' Daily Fantasy Sports (DFS) contests are widely available across the **U.S. and Canada** in states such as **_California_, _Texas_** and our home state of **_Georgia._** In fact, over 70% of the **U.S. + Canadian** populations can currently play on PrizePicks! If you want to play PrizePicks on current events like the NFL, you'll need to know if you are eligible!" (Emphasis and hyperlinks in original.)

96.     If a user follows the "California" hyperlink, he is taken to the PrizePicks California landing page,[28] which shows PrizePicks is "Daily Fantasy sports in California Made Easy," followed by California-specific promotional offers:



97.     The PrizePicks' California landing page can also be accessed through many other links, including directly from Google and other online search engine results.

/ / /

/ / /

/ / /

---

[28] https://www.prizepicks.com/states/california (last visited June 10, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1
2

98.     Further down the California landing page, PrizePicks once again emphasizes that PrizePicks is making "California Daily Fantasy Sports . . . Easy" for the user:

3
4
5
6
7
8
9
10
11
12



13
14

99.     And PrizePicks once again follows up with a map reflecting that PrizePicks is available in California, among 45 other states:

15
16
17
18
19
20
21
22
23
24
25
26
27



28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

100.    At the bottom of the California landing page, the user is presented with a series of Frequently Asked Questions:



101.    If the user expands the questions, he receives answers assuring him that he can play PrizePicks Pick 'Em in California (and many other states);

-32-

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

102.    Further, if a user attempts to explore the Gambling Websites before creating an account, he is expressly blocked from seeing many webpages until location sharing information is authorized, with PrizePicks stating that it needs to "validate your state's Daily Fantasy Sports eligibility:"



/ / /

/ / /

/ / /

103.    PrizePicks' representations regarding the availability Pick 'Em are in contrast to its representations regarding the availability of its other common products.

104.    For example, PrizePicks has a similar "availability map" for its "Streak" product,[29] which reflects the product is not available in California and many other states:



105.    And PrizePicks states that it's "Pick 'Em Arena" product is only available in specific select states, excluding California:[30]



---

[29] https://www.prizepicks.com/streak (last visited June 10, 2025).

[30] https://www.prizepicks.com/resources/how-to-play-prizepicks-pick-em-arena (last visited June 10, 2025).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

106.    Moreover, throughout the Gambling Websites, PrizePicks identifies different ages by state where customers can utilize the gambling products, for example:[31]

**Pick 'Em** is available to residents 18+ in AR, CA, GA, IN, MN, NC, ND, NE, NM, OK, RI, SC, SD, TX, UT, VT, VA, WI and District of Columbia. 19+ in Canada (excluding Ontario).

Select more or less on 2-6 projection squares, choose Flex Play (1 or 2 picks can lose) or Power Play (all must win) and then lock in your lineup for big payouts.

**Pick 'Em Arena** is available to residents 18+ in AK, DE, FL, IL, KS, KY, ME, MO, NH, OR, TN, WV, & WY. 19+ in AL, CO. 21+ in AZ and MA

Select more or less on 2+ player projections, select your entry fee, and then submit your lineup. Your lineup is placed into a group according to member skill level, entry fee, number of projections selected, and the time of lineup submission. Members win by selecting a perfect lineup or by having the best lineup in the group.

**Streak (Free to Play):**

Available to residents 18+ in CT, MD, MI, MS, NJ, NY, OH, PA. 21+ in IA, LA.

107.    Combined with PrizePicks' affirmative representations about where Pick 'Em is permitted, users are left to believe that PrizePicks, "the largest daily fantasy sports operator in North America,"[32] has carefully reviewed the gambling laws of California and other states and concluded that certain products are lawful in California and others are not.

108.    Indeed, PrizePicks expressly states in its "How to Play PrizePicks" webpage,[33] that one of the reason users are required to submit their personal identifying information to PrizePicks is to "ensure that you meet state mandated age and location requirements governing daily fantasy sports:"

## 1. Register for a PrizePicks Account

When you first register for an account, you'll be asked to provide your name, email address, date of birth, address, and a password. We require personal identifying information such as your address and date of birth to ensure that you meet state mandated age and location requirements governing daily fantasy sports.

/ / /

/ / /

/ / /

---

[31] https://www.prizepicks.com/resources/states-where-you-can-play-prizepicks (last visited June 10, 2025).

[32] https://www.prizepicks.com/press-news/prizepicks-teams-up-with-the-san-francisco-giants-as-official-daily-fantasy-sports-partner (last visited June 10, 2025).

[33] https://www.prizepicks.com/resources/how-to-play-prizepicks (last visited June 10, 2025)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

109.    PrizePicks further states that its verification tools, which, as noted above, includes location verification, are used to "comply with applicable laws":

## 2. Verify your identity

Privacy and member data protection are at the forefront of everything we do. One of the best ways to protect members is to verify their identities and confirm you are who you say you are.

Our verification tools allow us to confirm and authenticate your identity, comply with applicable laws, and safeguard PrizePicks and its players from fraud and bad actors so that we can continuously offer our world-class single-player DFS game in the safest environment possible.

Once you correctly enter the requested information and have submitted valid legal identification you will be ready to fund your account and start playing PrizePicks! If you have any issues verifying your identity or come across PrizePicks second-level identify verification please do not hesitate to reach out to our 24/7 customer support HERE to help finish getting your account set up.

110.    Similar representations are made on the mobile apps. For example, PrizePicks includes state specific age requirements and represents that account verification is needed in order to "follow the rules of the region where you are physically located while accessing the app:"

  

111.    Put simply, PrizePicks intentionally and strategically leads—in fact, misleads—consumers into believing that its operation of the Gambling Websites in California is legal.

112.    It is not.

/ / /

/ / /

-36-

**E.     Plaintiffs' Experiences.**

**1.     Plaintiff Justin Franks' Experience.**

113.     At all times relevant to this action, including at all times since creating an account with PrizePicks, Plaintiff Justin Franks has resided in San Francisco, California.

114.     In or about 2020, in response to advertisements he saw on social media while residing in San Francisco, California, Plaintiff Justin Franks created an account with PrizePicks. PrizePicks represented to Plaintiff Franks that the products and services it offered in California were legal.

115.     Since that time, PrizePicks has continued to represent to Plaintiff Franks including on the Gambling Websites themselves—that its services are legal in California.

116.     In setting up and using his PrizePicks account, Plaintiff Franks expressly relied upon PrizePicks' representations that the services it provides in California are legal.

117.     If PrizePicks had honestly and accurately disclosed the unlawful nature of its gambling operations in California, Plaintiff Franks would not have created an account with PrizePicks in California and would not have placed bets while in California through the PrizePicks Gambling Websites.

118.     Since December of 2023 Plaintiff Franks, has lost over $1,000 to PrizePicks while in California.

119.     If PrizePicks had not solicited bets and wagers from Plaintiff Franks while representing that such activities were legal (when, unknown to Plaintiff Franks at the time, they in fact were not legal), he would not have made any of those bets or wagers and would not have paid any money to PrizePicks.

120.     Among other gambling options offered by PrizePicks in California, Plaintiff Franks has played Pick 'Em while in California and lost money to PrizePicks.

121.     In Plaintiff Franks' experience, PrizePicks serves as the "house," setting the betting lines, taking bets and wagers from all users, documenting (i.e., "booking") those bets, using its records to determine "winners" and "losers," and eventually paying out the winners.

122.   While Plaintiff Franks has now discontinued the use of PrizePicks while in California, he remains interested in online gambling in California, and if it becomes legal, he would continue to gamble online in California. Plaintiff Justin Franks may be tricked by PrizePicks in the future into engaging in unlawful gambling in California if PrizePicks continues to claim that its practices are legal.

123.   Plaintiff Franks' sole reason for setting up an account with PrizePicks and purportedly consenting to PrizePicks' terms of service (which he did not review and was not aware he was purportedly agreeing to at the time of account creation or otherwise) was to gain access to the gambling services in California offered by PrizePicks that he now understands violate California law.

124.   Said differently, to the extent a contract was formed between Plaintiff Franks and PrizePicks, the sole purpose of the contract was to facilitate the unlawful gambling activities that are at issue in this Complaint.

125.   Accordingly, Plaintiff Franks' contract with PrizePicks (to the extent any such contract was otherwise ever formed), is void (and was void *ab initio*) pursuant to, among other authorities, California Civil Code Section 1667, which makes contracts invalid where the contract is: "1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals."

**2.     Plaintiff Jack Bacigalupi's Experience.**

126.   At all times relevant to this action, including at all times within the past four years, Plaintiff Jack Bacigalupi has resided in San Francisco, California.

127.   In or about 2022, in response to PrizePicks advertisements he had seen on social media while in San Francisco, California, Plaintiff Bacigalupi created an account with PrizePicks. PrizePicks represented to Plaintiff Bacigalupi that the products and services it offered in California were legal.

128.   Since that time, PrizePicks has continued to represent to Plaintiff Bacigalupi including on the Gambling Websites themselves—that its services are legal in California.

129.    In setting up and using his PrizePicks account, Plaintiff Bacigalupi expressly relied upon PrizePicks' representations that the services it provides in California are legal.

130.    If PrizePicks had honestly and accurately disclosed the unlawful nature of its gambling operations in California, Plaintiff Bacigalupi would not have created an account with PrizePicks in California and would not have placed bets while in California through the PrizePicks Gambling Websites.

131.    For example, in October of 2024, relying on PrizePicks representations, Plaintiff Bacigalupi, while in San Francisco California, lost several hundred dollars betting on NFL Pick 'Em contests hosted by PrizePicks on the Gambling Websites.

132.    If PrizePicks had not solicited bets and wagers from Plaintiff Bacigalupi while representing that such activities were legal (when, unknown to Plaintiff Bacigalupi at the time, they in fact were not legal), he would not have made any of those bets or wagers and would not have paid any money to PrizePicks.

133.    In Plaintiff Bacigalupi's experience, PrizePicks serves as the "house," setting the betting lines, taking bets and wagers from all users, documenting (i.e., "booking") those bets, using its records to determine "winners" and "losers," and eventually paying out the winners.

134.    While Plaintiff Bacigalupi has now discontinued the use of PrizePicks while in California, he remains interested in online gambling in California, and if it becomes legal, he would continue to gamble online in California. Plaintiff Bacigalupi may be tricked by PrizePicks in the future into engaging in unlawful gambling in California if PrizePicks continues to claim that its practices are legal.

135.    Plaintiff Bacigalupi's sole reason for setting up an account with PrizePicks and purportedly consenting to PrizePicks' terms of service (which he did not review and was not aware he was purportedly agreeing to at the time of account creation or otherwise) was to gain access to the gambling services in California offered by PrizePicks that he now understands violate California law.

136.    Said differently, to the extent a contract was formed between Plaintiff Bacigalupi and PrizePicks, the sole purpose of the contract was to facilitate the unlawful gambling activities that are at issue in this Complaint.

137.    Accordingly, Plaintiff Bacigalupi's contract with PrizePicks (to the extent any such contract was otherwise ever formed), is void (and was void *ab initio*) pursuant to, among other authorities, California Civil Code Section 1667, which makes contracts invalid where the contract is: "1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals."

**F.    Plaintiffs' Claims Are Not Subject to Arbitration.**

138.    Plaintiffs' sole reason for setting up an account with PrizePicks and purportedly consenting to PrizePicks' terms of service (which they did not review and were not aware they were purportedly agreeing to at the time of account creation or otherwise) was to gain access to the gambling services in California offered by PrizePicks that they now understand violate California law.

139.    Said differently, to the extent a contract was formed between Plaintiffs, respectively, and PrizePicks, the sole purpose of the contract was to facilitate the unlawful gambling activities that are at issue in this Complaint.

140.    Accordingly, Plaintiffs' respective contracts with PrizePicks (to the extent any such contracts were otherwise ever formed), are void (and were void *ab initio*) pursuant to, among other authorities, California Civil Code Section 1667, which makes contracts invalid where the contract is: "1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals."[34]

/ / /

/ / /

/ / /

---

[34] Plaintiffs expressly reserve their right to contest the PrizePicks Terms of Service on additional and separate grounds in response to any motion brought by PrizePicks or otherwise.

141.    Moreover, even if a contract were formed (and it was not), by the express terms of that contract, "claim[s] for equitable relief" are "not subject to the Agreement to Arbitrate":

> Exceptions to Arbitration. You and PrizePicks agree that **the following claims are not subject to the Agreement to Arbitrate**: (a) any claim seeking to enforce or protect, or concerning the validity of, any of PrizePicks' intellectual property rights; (b) any claim brought by PrizePicks related to, or arising from, allegations of your piracy [sic] or invasion of privacy; and (c) **any claim for equitable relief**. In addition to the foregoing, PrizePicks may assert an individual action as described in Section 23.1.

PrizePicks Terms of Service dated January 6, 2025 at ¶ 23.2 (emphasis added).[35]

142.    In this Action, Plaintiffs expressly only allege claims for equitable relief, as reflected in Section VII, below, and accordingly, their claims are not subject to arbitration.

**G.    PrizePicks' Affirmative Misrepresentations Have Tolled the Statute of Limitations.**

143.    As detailed above, PrizePicks has consistently and explicitly represented to the public and its customers, including Plaintiffs and the Class (as defined below), that its operation of the Gambling Websites in California is permissible and legal.

144.    Among other things, PrizePicks has held itself out as being an expert on gambling law and regulations, and induced Plaintiffs and the Class to rely on its affirmative false representations and statements in order to secure Plaintiffs' and the Class's use of the Gambling Websites and to keep Plaintiffs and the Class using the unlawful Gambling Websites in California.

145.    As a direct and proximate result of PrizePicks' affirmative misrepresentations and statements, Plaintiffs and the Class had no reason to believe that operation of the Gambling Websites was unlawful. In fact, just the opposite. They trusted and relied upon the purported expertise of PrizePicks, "the largest daily fantasy sports operator in North America,"[36] in California gambling law and regulation.

146.    Plaintiffs and the Class were unable to discover—and in fact, did not discover—the true and unlawful nature of the Gambling Websites on their own, as, on information and belief,

---

[35] Available online at https://www.prizepicks.com/help-center/terms-of-service (last visited June 10, 2025).

[36] https://www.prizepicks.com/press-news/prizepicks-teams-up-with-the-san-francisco-giants-as-official-daily-fantasy-sports-partner (last visited June 10, 2025).

PrizePicks and others in the online gambling industry have inundated the internet and other publicly available resources (e.g., news articles and legal blogs) with claims that daily fantasy sports betting contests and other betting contests, like Pick 'Em, are legal in California.

147.    When Plaintiffs did finally learn the true unlawful nature of the Gambling Websites' operation in or about June of 2025, Plaintiffs promptly filed this lawsuit.

**H.    PrizePicks Acted with Malice, Oppression, and Fraud.**

148.    As detailed in this Complaint, PrizePicks has acted with malice, oppression, and fraud.

149.    PrizePicks acted with malice, because, among other reasons and as otherwise detailed in this Complaint, PrizePicks' conduct was despicable and was done with a willful and knowing disregard of the rights of the public, Plaintiffs, and the Class (as defined below) because PrizePicks knew (or should have known) that its gambling operations in California were illegal, but despite that induced Plaintiffs and the Class to gamble and lose money through its Gambling Websites while in California. As the California legislature has repeatedly made clear, "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

150.    PrizePicks' conduct was oppressive because, among other reasons and as otherwise detailed in this Complaint, it was despicable and subjected Plaintiffs and the Class to cruel and unjust hardship in knowing disregard of their rights, including by falsely inducing them to lose significant sums of money through the illegal gambling enterprise that PrizePicks held out as being legal in California.

151.    PrizePicks' conduct was fraudulent, because, among other reasons and as otherwise detailed in this Complaint, PrizePicks intentionally misrepresented and concealed the true nature of its unlawful gambling enterprise from Plaintiffs and the Class by affirmatively representing that the Gambling Websites and associated contests were legal in California when PrizePicks knew (or should have known) that such contests were not.

1

## VI.     CLASS ALLEGATIONS

2     152.     This action is brought and may properly proceed as a class action pursuant to Federal

3     Rule of Civil Procedure Rule 23, including, without limitation, Sections (b)(1), (b)(2), and (b)(3)

4     of Rule 23.

5     153.     Plaintiffs seek certification of the following class (the "Class"):

6          All residents of California who placed a bet or wager on the
           Gambling Websites while in California.
7

8     154.     The following people are excluded from the Class: (1) any Judge or Magistrate

9     presiding over this action, members of their staffs (including judicial clerks), and members of their

10     families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any

11     entity in which the Defendants or its parents have a controlling interest, and their current or former

12     employees, officers and directors; (3) persons who properly execute and file a timely request for

13     exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on

14     the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel, and non-attorney

15     employees of their firms; and (6) the legal representatives, successors, and assigns of any such

16     excluded persons.

17     155.     PrizePicks' practices have resulted in actual injury and harm to the Class members

18     in the amount of deposits made with PrizePicks and/or losses incurred on the Gambling Websites

19     for bets or wagers placed while in California.

20     156.     Plaintiffs explicitly reserve their right to amend, add to, modify, and/or otherwise

21     change the proposed class definition as discovery in this action progresses.

22     157.     **Numerosity.** Plaintiffs are informed and believe that there are hundreds of

23     thousands or potentially millions of members of the Class. The Class is so large that the joinder of

24     all of its members is impracticable. The exact number of members of the Class can be determined

25     from information in the possession and control of PrizePicks.

26     158.     **Commonality.** PrizePicks has acted or refused to act on grounds that apply

27     generally to the Class. Absent certification of the Class, the relief sought herein creates the

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

possibility of inconsistent judgments and/or obligations imposed on PrizePicks and/or Plaintiffs and the Class. Numerous common issues of fact and law exist, including, without limitation:

a.  What gambling contests PrizePicks offers in California.

b.  What mediums (e.g., website, app, in person, etc.) PrizePicks offers its gambling contests through in California.

c.  The dates and number of gambling contests offered by PrizePicks in California.

d.  Whether PrizePicks violates California Penal Code Section 319 by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

e.  Whether PrizePicks violates California Penal Code Section 320 by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

f.  Whether PrizePicks violates California Penal Code Section 321 by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

g.  Whether PrizePicks violates California Penal Code Section 330 by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

h.  Whether PrizePicks violates California Penal Code Section 330a by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

i.  Whether PrizePicks violates California Penal Code Section 337a by operating the Gambling Websites in California and allowing California residents to place bets and wagers on the Gambling Websites.

j.  Whether PrizePicks violates any additional sections of the California Penal Code or other applicable California law and/or regulation by operating the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Gambling Websites in California and allowing California residents to place

bets and wagers on the Gambling Websites.

k.    Whether PrizePicks' violations of the California Penal Code give rise to

liability under California's unfair competition law.

l.    Whether PrizePicks is a "person" within the meaning of Section 1761(c) of

the California Consumer Legal Remedies Act ("CLRA").

m.    Whether Plaintiffs are "consumers" within the meaning of Section 1761(d)

of the CLRA.

n.    Whether PrizePicks' practices violate the following CLRA Sections, among

others:

i.    "Misrepresenting the source, sponsorship, approval, or certification

of goods or services" (a)(2);

ii.    "Misrepresenting the affiliation, connection, or association with, or

certification by, another" (a)(3);

iii.    "Representing that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities that they do not

have or that a person has a sponsorship, approval, status, affiliation, or

connection that the person does not have" (a)(5);

iv.    "Representing that goods or services are of a particular standard,

quality, or grade, or that goods are of a particular style or model, if they are

of another" (a)(7);

v.    "Representing that a transaction confers or involves rights, remedies,

or obligations that it does not have or involve, or that are prohibited by law"

(a)(14);

vi.    "Representing that the consumer will receive a rebate, discount, or

other economic benefit, if the earning of the benefit is contingent on an

event to occur subsequent to the consummation of the transaction" (a)(17);

and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

vii.    "Inserting an unconscionable provision in the contract" (a)(19).

o.    Whether PrizePicks' operation of the Gambling Websites should be enjoined in California.

p.    The appropriate equitable monetary model for calculating equitable restitution and/or equitable disgorgement.

q.    Whether PrizePicks' affirmative misrepresentations that the Gambling Websites are legal tolled any otherwise applicable statutes of limitations.

r.    Whether any subset of claims held by the Class are barred by the statute of limitations.

159.    **Predominance.** These common issues predominate over individualized inquiries in this action because PrizePicks' liability can be established as to all members of the Class as discussed herein.

160.    **Typicality.** Plaintiffs' claims against PrizePicks and experience with PrizePicks are typical, if not identical, to the claims and experiences of members of the Class because, among other reasons, Plaintiffs' claims arise from PrizePicks' practices that are applicable to the entire Class.

161.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Class, as Plaintiffs and each member of the Class lost money to PrizePicks. Plaintiffs also have no interests antagonistic to those of the Class, and PrizePicks has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Class.

162.    **Superiority.** There are substantial benefits to proceeding as a class action that render proceeding as a class action superior to any alternatives, including that it will provide a realistic means for members of the Class to receive equitable monetary relief; the equitable monetary relief suffered by members of the Class may be relatively small; it would be substantially

less burdensome on the courts and the parties than numerous individual proceedings; many members of the Class may be unaware that they have equitable recourse for the conduct alleged herein; and because issues common to members of the Class can be effectively managed in a single proceeding. Plaintiffs and their counsel know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

163.    Plaintiffs reserve the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

## VII.    CAUSES OF ACTION

**A.    First Cause of Action: Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, ("UCL") on Behalf of Plaintiffs and the Class.**

164.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 163, inclusive, of this Complaint.

165.    PrizePicks, Plaintiffs, and Class are "persons" within the meaning of the UCL.

166.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," each of which is separately actionable.

167.    PrizePicks' practices of operating the Gambling Websites within California are "unlawful" within the meaning of the UCL because, among other things, the operation of the Gambling Websites violates California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j because, among other reasons, in the course of business and in the course of trade and commerce, PrizePicks has:

    a.    Operated illegal lotteries and/or games of chance in violation of Penal Code Sections 319, 320, 321, 330a, and 337j by operating the Gambling Websites and Pick 'Em contests in California.[37]

---

[37] Plaintiffs note that they are specifically authorized by Federal Rule of Civil Procedure Rule 8(d)(2) to make their allegations in the alternative, and accordingly, allege that the gambling contests offered in California by PrizePicks constitute games of "chance" for purposes of those Penal Code Sections that prohibit lotteries and/or other games of chance, and constitute games of skill, to the extent skill is found to be a necessary element of certain claims made under Penal Code Section 337a or otherwise.

b.  Operated banking and/or percentage gambling games in violation of Penal Code Section 330 by operating the Gambling Websites and Pick 'Em contests in California.

c.  Engaged in pool selling in violation of Penal Code Section 337(a)(1) by operating the Gambling Websites and Pick 'Em contests in California.[38]

d.  Engaged in bookmaking in violation of Penal Code Section 337(a)(1) by operating the Gambling Websites and Pick 'Em contests in California.

e.  Violated Penal Code Section 337(a)(3) by "receiv[ing], hold[ing], or forward[ing] . . . money . . . staked, pledged, bet or wagered . . upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever" by operating the Gambling Websites and Pick 'Em contests in California.

f.  Violated Penal Code Section 337(a)(4) by "record[ing], or register[ing] any bet or bets, wager or wagers, upon the result . . . of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever" by operating the Gambling Websites and Pick 'Em contests in California.

---

[38] Plaintiffs expressly state their allegation of "pool selling" as an alternative to their "banking game" allegation, to the extent there is any inconsistency between these allegations.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

g.    Violated Penal Code Section 337(a)(6) by "[o]ffer[ing] or accept[ing] any bet or bets, or wager or wagers, upon the result . . . of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus" by operating the Gambling Websites and Pick 'Em contests in California.

168.    PrizePicks' operation of the Gambling Websites and Pick 'Em contests within California is also unlawful within the meaning of the UCL because PrizePicks has violated the CLRA, as alleged in the Second Cause of Action, below.

169.    PrizePicks' operation of the Gambling Websites and Pick 'Em contests within California is also unlawful within the meaning of the UCL because PrizePicks has violated the California Business and Professions Code, because "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

170.    The acts and practices of PrizePicks as alleged herein also constitute "unfair" business acts and practices under the UCL because PrizePicks' conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous. Further, the gravity of PrizePicks' conduct outweighs any conceivable benefit of such conduct.

171.    PrizePicks has, in the course of business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices by tricking consumers into believing operation of the Gambling Websites and Pick 'Em contests are lawful in California, when in fact, they are not, causing Plaintiffs and the Class to be tricked out of tens of millions of dollars.

172.    Plaintiffs and the Class have suffered injury in fact—in the form of all amounts paid to PrizePicks and/or the total of net losses on the Gambling Websites run by PrizePicks for bets placed within California—as a result of PrizePicks' unlawful and unfair business acts and practices and are at substantial risk of continuing to lose money and be injured by those acts and practices if the practices are not enjoined.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

173.    Plaintiffs seek all available *equitable* remedies under the UCL and expressly state that they do not seek any non-equitable remedies. Specifically, Plaintiffs and the Class seek an order providing equitable restitution and/or equitable disgorgement in the form of all amounts paid to PrizePicks by Plaintiffs and the Class and/or the total of net losses on the Gambling Websites by Plaintiffs and the Class for bets placed within California.

174.    Plaintiffs further seek an equitable order enjoining the unlawful practices.

175.    To the extent found to be available in a claim at equity, Plaintiffs and the Class further seek their attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5 because Plaintiffs and the Class seek to enforce "an important right affecting the public interest" in bringing this equitable claim.

**B.    Second Cause of Action: Violation of California's Consumer Legal Remedies Act, California Civil Code §§ 1750 *et seq.*, on Behalf of Plaintiffs and the Class.**

176.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 163, inclusive, of this Complaint.

177.    At all relevant times, Plaintiffs and Class members were "consumers" within the meaning of the CLRA, as they were individuals seeking or acquiring, by purchase or lease, goods or services for personal, family, or household purposes.

178.    PrizePicks' actions and conduct constituted transactions for the sale or lease of goods or services to consumers under the terms of the CLRA, namely the selling of the unlawful gambling goods and services that are at issue in this action through the Gambling Websites.

179.    PrizePicks violated the CLRA by, among other things:

    a.    "Misrepresenting the source, sponsorship, approval, or certification of goods or services" (a)(2);

    b.    "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

    c.    **"**Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have

or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have" (a)(5);

    d.   "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (a)(7);

    e.   "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

    f.   "Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction" (a)(17); and

    g.   "Inserting an unconscionable provision in the contract" (a)(19).

180.    PrizePicks' actions and misrepresentations were material, and PrizePicks' violations of the CLRA were a substantial factor in causing Plaintiffs and the Class to lose money.

181.    As a direct and proximate consequence of these actions, Plaintiffs and the Class suffered injury.

182.    PrizePicks' conduct was malicious, fraudulent, and wanton in that it intentionally and knowingly provided misleading information to Plaintiffs and the Class for Defendants' own benefit to the detriment of Plaintiffs and the Class.

183.    The CLRA provides robust enforcement tools for consumers, including:

    a.   Prohibiting the waiver of any substantive rights provided for under the CLRA. *Id.* § 1750

    b.   Requiring that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

    c.   Establishing a substantive right to litigate in the forum where the transaction occurred. *Id.* § 1780(d).

1             d.      Establishing a substantive right to pursue class claims. *Id.* § 1781; *see also*

2                         *id.* § 1752.

3             e.      Authorizing injunctive relief. *Id.* § 1780(a)(2)

4             f.      Authorizing restitution of unlawfully taken sums. *Id.* § 1780(a)(3).

5             g.      Requiring that the Court "shall award court costs and attorney's fees to a

6                         prevailing plaintiff in litigation." *Id.* § 1780(e).

7      184.     Plaintiffs seek all available *equitable* remedies under the CLRA and expressly state

8 that they do not seek any non-equitable remedies.

9                  **VIII.**     **PRAYER FOR RELIEF**

10      185.     Plaintiffs, individually and on behalf of all others similarly situated, respectfully

11 request that this Court enter an Order:

12             a.      Granting all available *equitable* remedies and expressly state that they

13                         do not seek any non-equitable remedies.[39]

14             b.      Certifying the proposed Class pursuant to Rule 23, appointing

15                         Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel

16                         as Class Counsel;

17             c.      Providing for any and all equitable injunctive relief the Court deems

18                         appropriate;

19             d.      Awarding equitable monetary relief, including but not limited to

20                         equitable restitution and/or equitable disgorgement;

21             e.      Providing for any and all other equitable monetary relief the Court

22                         deems appropriate;

23             f.      Awarding Plaintiffs their reasonable costs and expenses of suit,

24                         including attorney's fees to the extent allowed at equity;

25

26

---

27 [39] If this action is compelled to arbitration (and it should not be) and/or the Terms of Service are otherwise found by the Court to be void and/or in applicable to this action, Plaintiffs reserve their

28 right to add additional claims for non-equitable relief at such time.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1      g.    Awarding pre- and post-judgement interest on any equitable monetary

2            recovery to extent allowed at equity; and

3      h.    Providing such further equitable relief as this Court may deem just

4            and proper.

5

6    Respectfully submitted,

7

8    Dated: June 11, 2025                    By:  */s/ Wesley M. Griffith*
                                             Wesley M. Griffith, SBN 286390
9                                            **ALMEIDA LAW GROUP LLC**
                                             3550 Watt Ave, Suite 140
10                                           Sacramento, CA 95821
                                             Telephone: 530-490-3178
11                                           E-mail: wes@almeidalawgroup.com

12                                           Christopher Nienhaus, *pro hac vice* to be filed
                                             **ALMEIDA LAW GROUP LLC**
13                                           849 W. Webster Ave
                                             Chicago, IL 60614
14                                           Telephone: 708-529-5418
                                             E-mail: chris@almeidalawgroup.com

15                                           *Counsel for Plaintiffs and the Proposed Class*

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1

## IX.    DEMAND FOR TRIAL BY JURY

2     Plaintiffs, on behalf of themselves and the putative Class, hereby respectfully demand a trial

3   by jury on all claims for which a jury trial is available.

4

Dated: June 11, 2025                    By:  */s/ Wesley M. Griffith*

5                                             Wesley M. Griffith, SBN 286390
                                              **ALMEIDA LAW GROUP LLC**
6                                             3550 Watt Ave, Suite 140
                                              Sacramento, CA 95821
7                                             Telephone: 530-490-3178
                                              E-mail: wes@almeidalawgroup.com
8
                                              Christopher Nienhaus, *pro hac vice* to be filed
9                                             **ALMEIDA LAW GROUP LLC**
                                              849 W. Webster Ave
10                                            Chicago, IL 60614
                                              Telephone: 708-529-5418
11                                            E-mail: chris@almeidalawgroup.com

12                                            *Counsel for Plaintiffs and the Proposed Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL