1    DAVID MARROSO (S.B. #211655)
     dmarroso@omm.com
2    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, 8th Floor
3    Los Angeles, California  90067-6035
     Telephone:    +1 310 553 6700
4    Facsimile:    +1 310 246 6779

5    RANDALL W. EDWARDS (S.B. #179053)
     redwards@omm.com
6    O'MELVENY & MYERS LLP
     Two Embarcadero Center, 28th Floor
7    San Francisco, California  94111-3823
     Telephone:    +1 415 984 8700
8    Facsimile:    +1 415 984 8701

9    CHRISTOPHER FROST (S.B. #200336)
     chris@frostllp.com
10   NICHOLAS LAUBER (S.B. #288499)
     nick@frostllp.com
11   FROST LLP
     10960 Wilshire Boulevard, Suite 2100
12   Los Angeles, California 90024
     Telephone:    (424) 254-0441
13   Facsimile:    (424) 600-8504

14   *Attorneys for Defendant SidePrize LLC d/b/a PrizePicks*

15                    **UNITED STATES DISTRICT COURT**

16                    **NORTHERN DISTRICT OF CALIFORNIA**

17

18

19   JUSTIN FRANKS, JACK BACIGALUPI,
     individually and on behalf of others          Case No. 3:25-cv-04916-CRB
20   similarly situated,
                                                    **DEFENDANT PRIZEPICKS' MOTION
21                        Plaintiffs,               TO DISMISS**

22             v.                                   Date: August 18, 2025
                                                    Hearing Date: October 31, 2025
23   SIDEPRIZE LLC d/b/a PRIZEPICKS,                Hearing Time: 10:00 AM
     AND DOES 1-20,                                 Judge: Hon. Charles R. Breyer
24
                          Defendants.
25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to Local Rule 7-2, on Friday, October 31, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 6, 17th Floor, United States District Courthouse, 450 Golden Gate Avenue, San Francisco, California, before Judge Charles R. Breyer, Defendant PrizePicks will move this Court to dismiss Plaintiffs' class action complaint with prejudice because both its causes of action for (1) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), and (2) Violation of California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750 *et seq.* ("CLRA") fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

This motion is based upon this Notice of Motion; the enclosed Memorandum of Points and Authorities; the concurrently filed Proposed Order, Request for Judicial Notice, and Declaration of David Marroso; all the pleadings, files, and records in this proceeding; and any other information and argument before the Court at the hearing.

## SUMMARY OF ARGUMENT

This case concerns fantasy sports contests. Defendant PrizePicks offers contestants the opportunity to play "fantasy" sports general manager by using their skill and knowledge to assemble a roster of real-world athletes across teams and sports, pay an entry fee, compete with others, all in the hope of winning a prize.

Plaintiffs are California residents who voluntarily participated in PrizePicks contests. They bring causes of action under California's UCL and CLRA statutes, claiming [a] PrizePicks' fantasy contests constitute unlawful gambling, and [b] PrizePicks deceived Plaintiffs into believing that its fantasy sports contests were lawful in California when allegedly they are not. Plaintiffs seek hundreds of millions of dollars in refunds, which they characterize as "equitable restitution."

Plaintiffs' two claims must be dismissed for several reasons:

**1.** Plaintiffs' claims are barred by California's public policy and the *in pari delicto* ("in equal fault") doctrine. *See infra*, Section IV(A). The gravamen of Plaintiffs' lawsuit is that PrizePicks' fantasy sports contests constitute unlawful gambling, and PrizePicks deceived Plaintiffs

into playing the contests by misrepresenting their lawfulness in California.  For more than a century, however, California courts have rejected such claims as a matter of law.  Whether sitting in law or equity, California courts deny claims which seek reimbursement when plaintiffs participated in a transaction they now characterize as gambling.  *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462 (1999), is the key case.

**2.**  Plaintiffs lack statutory standing because they do not plead adequately causation or economic injury.  *See infra*, Section IV(B).  Plaintiffs received exactly what they paid for: an entry in PrizePicks' fantasy sports contests with the opportunity to secure a prize.  Key cases mandating dismissal for lack of statutory standing are *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 640 (2009) and *Mai v. Supercell Oy*, 2024 WL 2077500 (9th Cir. May 9, 2024).

**3.**  Plaintiffs fail to plead a claim under the CLRA, which applies only to defined "goods" and "services."  Cal. Civ. Code § 1761(a)-(b).  As the California Supreme Court held in *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009), the contracts at issue here do not constitute cognizable "goods" or "services" under the CLRA.

**4.**  PrizePicks never made any false or misleading statements about the legality of its contests.  *See infra*, Section IV(C).  Plaintiffs allege PrizePicks represented that its games were "available" in California.  However, being "available" and being "legal" or "lawful" are two very different things.  Even if Plaintiffs were to argue the term "available" is vague and therefore cannot be decided on a pleading motion, PrizePicks' Terms of Service, to which Plaintiffs expressly agreed, state that PrizePicks does ***not*** represent that its contests are legal in any State.  Plaintiffs fail to satisfy Federal Rule of Civil Procedure 9(b) and identify no misrepresentation by PrizePicks.  The key cases supporting dismissal are *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003), *Hawkins v. Walmart Inc.*, 766 F. Supp. 3d 1036 (E.D. Cal. 2025), and *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

**5.**  Plaintiffs' claims separately fail because they do not allege the absence of an adequate remedy at law, a jurisdictional prerequisite to equitable recovery in federal court.  *See infra*, Section IV(D).  To evade their arbitration agreement with PrizePicks, Plaintiffs seek only equitable relief, but they fail to make the requisite allegation that legal remedies would be inadequate.  The key

cases requiring dismissal are *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) and *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308 (9th Cir. 2022).

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND ........................... 2

        A.      Plaintiffs' Participation in PrizePicks' Fantasy Sports Contests ............................ 2

        B.      PrizePicks' (Alleged) Representations About Its Contests ...................................... 3

        C.      Plaintiffs' Claims Against PrizePicks ........................................................................ 4

III.    LEGAL STANDARD ........................................................................................... 5

IV.     ARGUMENT ...................................................................................................... 5

        A.      Public Policy and the in Pari Delicto Doctrine Bar Plaintiffs' Claims. ................. 5

                1.      California Prohibits Gambling-Related Claims. ......................................... 5

                2.      This Rule Defeats Plaintiffs' Claims .......................................................... 6

        B.      Plaintiffs Lack Economic Injury Required for Statutory Standing ....................... 9

        C.      PrizePicks' Contests Are Not a "Good" or "Service" under the CLRA ................. 10

        D.      Plaintiffs' Misrepresentation Claims Fail on the Merits ...................................... 10

                1.      Plaintiffs Have Not Satisfied Rule 9(b) or Pleaded Reliance. .................. 11

                2.      Plaintiffs Identify No Statements Giving a Guarantee of Legality ............ 11

                        a.      Offering a contest to the public is not an assertion of
                                lawfulness ...................................................................................... 11

                        b.      Plaintiffs' remaining arguments ignore the reasonable
                                consumer standard ....................................................................... 13

        E.      Plaintiffs' Adequate Remedy at Law Bars Their Equitable Claims. ..................... 14

V.      CONCLUSION .................................................................................................. 15

1    <u>**TABLE OF AUTHORITIES**</u>

2    **Cases**

3    *Alves v. Players Edge, Inc.*,
         2007 WL 6004919 (S.D. Cal. Aug. 8, 2007) ................................................................ 8

4
     *Anderson v. SeaWorld Parks & Entm't, Inc.*,
5        2016 WL 8929295 (N.D. Cal. Nov. 7, 2016) .............................................................. 10

6    *Ashcroft v. Iqbal*,
         556 U.S. 662 (2009) .............................................................................................. 5, 11

7
     *Bell Atl. Corp. v. Twombly*,
8        550 U.S. 544 (2007) .................................................................................................. 5

9    *Clark v. Am. Honda Motor Co.*,
         528 F. Supp. 3d 1108 (C.D. Cal. 2021) .................................................................... 15

10
     *Conservation Force v. Salazar*,
11       646 F.3d 1240 (9th Cir. 2011) ............................................................................... 5, 7

12   *Emps. Ins. of Wausau v. Granite State Ins. Co.*,
         330 F.3d 1214 (9th Cir. 2003) .................................................................................. 8

13   *Fairbanks v. Superior Ct.*,
         46 Cal. 4th 56 (2009) ................................................................................... ii, 1, 10

14
     *Freeman v. Cal. Bank & Tr.*,
15       2024 WL 2269264 (Cal. Ct. App. May 20, 2024) ...................................................... 10

16   *Freeman v. Time, Inc.*,
         68 F.3d 285 (9th Cir. 1995) ..................................................................................... 13

17   *Guzman v. Polaris Indus. Inc.*,
         49 F.4th 1308 (9th Cir. 2022) .............................................................................. iii, 15

18
     *Hawkins v. Walmart Inc.*,
19       766 F. Supp. 3d 1036 (E.D. Cal. 2025) .................................................................. ii, 12

20   *In re Apple Processor Litig.*,
         2023 WL 5950622 (9th Cir. Sept. 13, 2022) ........................................................... 15

21   *In re K F Dairies, Inc. & Affiliates*,
         224 F.3d 922 (9th Cir. 2000) ................................................................................... 10

22
     *Jamgotchian v. Scientific Games Corp.*,
23       371 F. App'x 812 (9th Cir. 2010) .............................................................................. 7

24   *Kearns v. Ford Motor Co.*,
         567 F.3d 1120 (9th Cir. 2009) .......................................................................... ii, 10, 11

25
     *Kelly v. First Astri Corp.*,
26       72 Cal. App. 4th 462 (1999) ........................................................................... ii, 5, 6, 7

27   *Kenney v. Fruit of the Earth, Inc.*,
         2024 WL 4578981 (9th Cir. Oct. 25, 2024) ............................................................... 9

28

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ........................................................................................ ii, 11, 14

*Mai v. Supercell Oy*,
   2024 WL 2077500 (9th Cir. May 9, 2024) ............................................................................ ii, 9

*Mason v. Machine Zone, Inc.*,
   140 F. Supp. 3d 457 (D. Md. 2015) ............................................................................................ 8

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) ............................................................................................................ ii, 9

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) .............................................................................................. ii, 12, 14

*Morgan v. AT&T Wireless Servs., Inc.*,
   177 Cal. App. 4th 1235 (2009) ................................................................................................ 11

*Ochoa v. Zeroo Gravity Games LLC*,
   2023 WL 4291650 (C.D. Cal. May 24, 2023) ............................................................................ 8

*Rodriguez v. Topps Co., Inc.*,
   104 F. Supp. 2d 1224 (2000) ...................................................................................................... 9

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) .................................................................................................. 15

*Simon v. SeaWorld Parks & Entm't, Inc.*,
   2022 WL 1594338 (S.D. Cal. May 19, 2022) .......................................................................... 10

*Smith v. United Seating & Mobility*,
   2024 WL 4441082 (C.D. Cal. Sept. 11, 2024) ........................................................................ 15

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .......................................................................................... iii, 14, 15

*Strickland v. Bicycle Casino, Inc.*,
   2012 WL 3756980 (Cal. Ct. App. Aug. 30, 2012) .................................................................... 8

*Tracy Anderson Mind & Body, LLC v. Roup*,
   2022 WL 17670418 (C.D. Cal. Dec. 12, 2022) ...................................................................... 11

*Wallace v. Opinham*,
   73 Cal. App. 2d 25 (1946) ................................................................................................. 6, 7, 8

*Ward v. Crow Vote LLC*,
   634 F. Supp. 3d 800 (C.D. Cal. 2022) ...................................................................................... 9

*Watkins v. MGA Entm't*,
   550 F. Supp. 3d 815 (N.D. Cal. 2021) .................................................................................... 15

*Western Telcon, Inc. v. Cal. State Lottery*,
   13 Cal. 4th 475 (1996) ................................................................................................................ 4

**Statutes**

Ariz. Admin. Code § R19-4-216 .................................................................................................. 14

Ariz. Rev. Stat. § 5-1205(A) ........................................................................................................ 14

Cal. Bus. & Prof. Code § 17200 ................................................................................ i

Cal. Bus. & Prof. Code § 17204 ......................................................................... 9, 11

Cal. Civ. Code § 1750 ............................................................................................ i

Cal. Civ. Code § 1761 .......................................................................................... 10

Cal. Civ. Code § 1770(a) ..................................................................................... 10

Cal. Civ. Code § 1780(a) ..................................................................................... 11

N.Y. Comp. Codes R. & Regs., tit. 9, § 5604.1 .................................................. 14

**Other Authorities**

*Available*, Merrian-Webster Dictionary,
    https://www.merriam-webster.com/dictionary/available .................................. 12

*Offer*, Merrian-Webster Dictionary,
    https://www.merriamwebster.com/dictionary/offer ......................................... 12

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................................. 11

Fed. R. Civ. P. 12(b)(6) .......................................................................................... i

L.R. 7-3(d)(2) ......................................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Since 2018, Californians have played fantasy sports contests offered by Defendant SidePrize LLC ("PrizePicks").  PrizePicks' contests let contestants play the role of general manager, using knowledge and skill to strategically assemble a "fantasy" team of real-world athletes in the hope of winning a prize.

Plaintiffs, two California users of PrizePicks' contests, filed this putative class action, claiming that the contests they voluntarily chose to play for years are, in fact, illegal gambling in violation of the California Penal Code.  Plaintiffs assert claims under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA").  Plaintiffs allege that PrizePicks' contests are "unlawful" under the UCL because of the alleged predicate violations of California's gambling laws and "unfair" under the UCL and involve misrepresentations under the CLRA because, as Plaintiffs (erroneously) allege, PrizePicks falsely represented that its contests are legal in the State.  Plaintiffs expressly seek a "refund" of the money they willingly spent to play in PrizePicks' contests, which they characterize as equitable restitution.  The complaint should be dismissed with prejudice for at least five reasons.

*First*, for over a hundred years, California courts have consistently rejected gambling-related civil claims.  Although PrizePicks disputes the legal predicate of Plaintiffs' claims—*i.e.*, that PrizePicks' contests involve illegal gambling in the first instance—the Court need not reach that issue on this motion.  As a matter of law, Plaintiffs cannot pursue claims to recover what they allege to be losses from having engaged in activities they now assert are illegal gambling.

*Second*, Plaintiffs have not pleaded the economic injury required for statutory standing.  Plaintiffs received precisely what they paid for: an opportunity to participate in PrizePicks' contests.  Their post-hoc claims that those contests are illegal does not create standing.

*Third*, Plaintiffs fail to plead a claim under the CLRA because their claim involves no "goods" or "services," as defined by that statute.  As the California Supreme Court recognized in *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009), the CLRA applies only to specifically defined services, which do not include the sort of entertainment platform PrizePicks provides.

*Fourth*, PrizePicks never made any false or misleading statements about the legality of its contests. Plaintiffs never allege that they viewed or relied upon any of the particular statements they now attack. The generic claims they offer are insufficient as a matter of law. And they fail to identify a single instance in which PrizePicks represented that its fantasy sports contests are "legal" or "lawful" in California. Instead, Plaintiffs rely on the fact that PrizePicks offers those contests in California. But the mere offering of a contest is not an implied guarantee of legal compliance. Indeed, PrizePicks' Terms of Service, to which Plaintiffs agreed, explicitly *disclaim* any representations of legality.

*Fifth*, Plaintiffs' claims for equitable restitution fail because they do not—and cannot— allege that they lack an adequate remedy at law. Federal law bars claims for equitable restitution where a legal claim could provide for monetary recovery. Here, Plaintiffs chose not to pursue damages under the CLRA, instead strategically choosing to plead only equitable claims in a transparent effort to evade the parties' arbitration agreement. The consequence of that choice is dismissal of their equitable claims for monetary relief.

## II.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[1]

### A.  Plaintiffs' Participation in PrizePicks' Fantasy Sports Contests

PrizePicks is a leading operator of fantasy sports contests and is the largest fantasy sports operator in North America. *See* Compl. ¶ 5. It began offering its contests in California in 2018, and it has official partnerships with the San Francisco Giants and the San Diego Padres. *See id.* ¶¶ 83-86. Plaintiffs Justin Franks and Jack Bacigalupi are two California residents who participated in the "Pick 'Em" contests PrizePicks formerly made available. *Id.* ¶¶ 120, 131.

As alleged in the Complaint, contestants in PrizePicks' "Pick 'Em" fantasy sports contests began by selecting a roster of between two and six athletes who participate in real-world sporting events. *Id.* ¶¶ 42-44. Contestants then choose among various statistical benchmarks against which their drafted players will be measured—the number of rebounds that an NBA player will obtain in a game, for instance—and make predictions about whether each player will exceed or fall short of

---

[1] Except where noted, the "facts" are drawn from Plaintiffs' complaint. PrizePicks accepts the allegations for purposes of this motion but will dispute some of them should the case proceed.

the selected benchmark. *Id.* ¶¶ 45-46, 53. Contestants pay an entry fee to enter the contest and decide which format to select. *Id.* ¶¶ 47-49. The prizes are fixed and are known to the contestant before they decide whether to enter the contest. *Id.* ¶¶ 48-50.

Whether a contestant wins a prize depends on the contestant's skills in selecting their roster and making their picks. *See id.* ¶ 56. Thus, contestants who know and leverage more information about athletes' typical performance, consistency, seasonal trends, lifetime statistics, and innumerable other strengths and weaknesses will be more successful than those who do not.

### B. PrizePicks' (Alleged) Representations About Its Contests

PrizePicks operates a website and mobile app where it makes contests "available" in California, *id.* ¶¶ 87, 89, 93-95, 99, and "offer[s]" contests that contestants over age 18 "can play" "in" California, *id.* ¶¶ 90, 96, 98, 100-01, 106. PrizePicks requires contestants to verify their location and identity to confirm which contests they can access, "ensure [they] meet state mandated age and location requirements governing daily fantasy sports," "comply with applicable laws," and safeguard PrizePicks and its players from fraud and bad actors." *Id.* ¶¶ 102, 106-09. And because PrizePicks offers a mobile app, it requires contestants to "follow the rules of the region where [they] are physically located while accessing the app," not just where they register. *Id.* ¶ 110.

At a surface level, Plaintiffs allege PrizePicks represents that its contests are "legal" or "lawful" in California. *Id.* ¶¶ 1, 41, 107, 111, 114-15, 119, 122, 127-28, 132-34, 143, 146, 150-51. But Plaintiffs identify **no** statement by PrizePicks using either those words, or words to that effect.

The **only** place PrizePicks discusses lawfulness is in its Terms of Service, which **disclaim** any representations of legality: "***PrizePicks does not warrant that your activities or use of the Site or App is lawful in any particular jurisdiction*** and, in any event, PrizePicks specifically disclaims such warranties." Marroso Decl., Ex. 1 ("TOS"), § 21. PrizePicks continues with the further statement to contestants that "***You understand that by using any of the features of the Site or App, you act at your own risk, and you represent and warrant that your activities are lawful in every jurisdiction where you access or use the Site or App or the content***." *Id.* (both emphases added).

These disclaimers are open and notorious. When creating an account, contestants must agree to PrizePicks' Terms of Service. Compl. ¶¶ 123, 135, 138. Plaintiffs admit that they agreed

- 3 -

to PrizePicks' Terms of Service, although they allege they did not review them and were somehow "not aware" that they were agreeing to them. *Id.* Despite this, Plaintiffs repeatedly reference and rely on certain other provisions of the Terms of Service, including section 23.2, which provides that "claim[s] for equitable relief" are not subject to the arbitration provision contained in the terms. *Id.* ¶¶ 141-42; *see* RJN (filed herewith).

## C.    Plaintiffs' Claims Against PrizePicks

Plaintiffs assert claims for violation of the UCL and CLRA, *id.* ¶¶ 164-84, both of which rest on the allegation that they "expressly relied upon PrizePicks' representations that the services it provides in California are legal." *Id.* ¶¶ 116, 129. But Plaintiffs do not allege that they saw or relied on any specific statement by PrizePicks about legality or lawfulness. *See id.* ¶¶ 114-16 (alleging Franks created an account in response to unidentified "advertisements he saw on social media" and relied on unspecified "representations that the services [PrizePicks] provides in California are legal"), ¶¶ 127-29 (same, Bacigalupi). The Complaint identifies one social media ad, but never claims Plaintiffs viewed it or that it made any statement about legality. *See id.* ¶ 89.

Plaintiffs' theories are predicated on the legal assertion that PrizePicks' fantasy sports contests are illegal gambling. *E.g.*, *id.* at ¶¶ 2 (asserting PrizePicks' contests amount to "unlawful gambling"), 124, 136, 139 (alleging that PrizePicks "facilitate[s] . . . unlawful gambling activities"), 149 ("PrizePicks knew (or should have known) that its gambling operations in California were illegal."). Their UCL claim thus asserts that the alleged illegal gambling violations are "unlawful," *id.* ¶ 167,[2] and that PrizePicks engaged in unfair and deceptive acts by "tricking consumers into believing operation of the Gambling Websites and Pick 'Em contests are lawful in California, when in fact, they are not," *id.* ¶¶ 170-71. Plaintiffs likewise allege that these "misrepresentations" violate the CLRA. *Id.* ¶¶ 168, 179-80.

Plaintiffs seek to represent a putative class of California residents who have participated in PrizePicks' contests. *Id.* ¶¶ 152-63. They principally seek "equitable restitution"—that is, the

---

[2] *See also id.* ¶¶ 59, 80, pointing to alleged predicate violations of California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j, which concern various forms of gambling, and *Western Telcon, Inc. v. Cal. State Lottery*, 13 Cal. 4th 475, 484 (1996) (describing "[t]he three key forms of gambling" in California as "gaming, lotteries, and betting").

1   money they willingly spent to play in PrizePicks' contests, or their total net losses. *Id.* ¶¶ 173, 183,

2   185.  They also seek other "*equitable* remedies" and disclaim "any non-equitable remedies." *Id.*

3   ¶ 185.  Plaintiffs contend that because they seek only equitable remedies, their claims are not

4   subject to arbitration under the Terms of Service. *Id.* ¶ 141.

5   **III.    LEGAL STANDARD**

6           A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."

7   *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (citation omitted).   The

8   Court should dismiss if Plaintiffs fail to articulate a "a cognizable legal theory" or "sufficient facts

9   alleged under a cognizable legal theory" to state a "facially plausible claim for relief." *Id.* at 1242.

10  "[S]peculative" allegations are not enough.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

11  And while the Court treats factual allegations as true, it need not accept "[t]hreadbare recitals of

12  the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*,

13  556 U.S. 662, 678 (2009).

14  **IV.    ARGUMENT**

15      **A.    Public Policy and the in Pari Delicto Doctrine Bar Plaintiffs' Claims.**

16          California bars claims to recover gambling losses or refunds from gambling transactions,

17  whether legal or illegal.  Both of Plaintiffs' claims hinge on their attempt to recover "total net

18  losses" from fantasy sports contests that they claim are illegal gambling.  Compl. ¶ 172, 180.  To

19  be clear, should this case proceed beyond the pleadings, PrizePicks will establish that its contests

20  are entirely lawful under California law.  However, well-established California authority prohibits

21  Plaintiffs from recovering their "total net losses" participating in Prize Picks' contests.

22      **1.    California Prohibits Gambling-Related Claims.**

23          "California has a strong, broad, and long-standing public policy against judicial resolution

24  of civil disputes arising out of gambling contracts or transactions"—a policy that "can be traced

25  back virtually to the inception of statehood." *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 477

26  (1999).  The policy "does not depend on the criminalization of gambling itself," and thus courts

27  will decline to entertain claims for recovery of gambling losses whether the allegedly gambling-

28  related activity is legal or illegal. *Id.* at 484, 489.  Some other states have enacted so-called "Queen

- 5 -

Anne" statutes authorizing civil claims to recover gambling losses, but the California "Legislature has not enacted a statute permitting the use of the process of the courts in California to resolve [such] gambling loss claims[.]" *Id.* at 489. Moreover, *Kelly* also recognized the related doctrine of "*in pari delicto*," or "in equal fault," would bar such claims. Under California law, if an activity constitutes unlawful gambling, "the illegality of the transaction makes the loser in pari delicto with the winner" and "neither courts of law nor courts of equity will aid or assist a plaintiff to recover money lost in a gambling game that is prohibited by law." *Id.* at 490 (quotations omitted).

Under the *Kelly* line of cases, even if a plaintiff claims that the defendant engaged in some additional fraudulent or deceptive conduct, the plaintiff is still *in pari delicto*. *Kelly* involved an allegation that the defendant used marked cards, but the doctrine barred the plaintiffs' claims to recover their loss "even if the loss resulted from cheating." *Id.* The Court of Appeal reached the same result in *Wallace v. Opinham*, 73 Cal. App. 2d 25, 26 (1946), holding that the plaintiff could not maintain an action based on asserted fraud because "[w]here the parties voluntarily engage in a gambling game which is prohibited by law . . . neither courts of law nor equity will aid or assist either party to enforce rights growing out of that illegal transaction." *Id.*

### 2. This Rule Defeats Plaintiffs' Claims.

The entire crux of Plaintiffs' claims is the allegation that PrizePicks' contests are forms of gambling under California law. Plaintiffs allege that PrizePicks' contests:

- are "unlawful" under the UCL because they violate various sections of the California Penal Code, the CLRA, and the Business and Professions Code, Compl. ¶¶ 167-69;

- are "unfair" under the UCL because they "trick[] consumers into believing" PrizePicks' contests "are lawful in California, when in fact they are not," *id.* ¶¶ 170-71; and

- violate the CLRA by "selling . . . unlawful gambling goods and services," *id.* ¶ 178; *see also id.* ¶¶ 59, 80, 124, 136, 139, 149 (various allegations of illegality).

Plaintiffs then confirmed again that "[t]his putative class action centers around allegations that [PrizePicks] has been unlawfully operating mobile applications and websites . . . [that] violate various Sections of the California Penal Code, including Section 337a." ECF No. 18 at 2.[3]

---

[3] This "notice" is improper because it is not "a relevant judicial opinion" and not filed in support of a pending motion. *See* L.R. 7-3(d)(2) (authorizing submission of "supplementary

Further, the remedy Plaintiffs seek is the money they assertedly "lost" due to their participation in this allegedly unlawful gambling. *Id.* ¶¶ 114, 118-120, 127, 130-31. Plaintiffs ask to represent a class of "[a]ll residents of California who placed a bet or wager" while participating in PrizePicks' fantasy sports contests, and they allege that putative class is entitled to "equitable restitution" of all "unlawfully taken sums"—that is, "all amounts paid to PrizePicks by Plaintiffs and the Class and/or the total of net losses on the Gambling Websites." *Id.* ¶¶ 153, 173, 183, 185.

These claims—based solely on Plaintiffs' participation in what they say is unlawful gambling—fall squarely within the *Kelly* line of cases and therefore fail as a matter of law. While PrizePicks strenuously disputes the notion that its fantasy sports contests involve unlawful gambling, it does not matter for purposes of this motion whether Plaintiffs or PrizePicks are correct on that score. A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Conservation Force*, 646 F.3d at 1241–42. And as Plaintiffs have framed them, their claims are precisely the type barred under *Kelly*'s "public policy against judicial resolution of civil disputes arising out of gambling contracts or transactions." 72 Cal. App. 4th at 477. Such attempts to "be placed in the *ex ante* position after losing a bet," regardless of the form or legality of the game, are "barred by *Kelly.*" *Jamgotchian v. Scientific Games Corp.*, 371 F. App'x 812, 813 (9th Cir. 2010).

Moreover, under Plaintiffs' theory of the case, their claims arise solely by virtue of their own participation in the contests that they now assert are illegal gambling, meaning that the *in pari delicto* doctrine further bars their claims. *Wallace*, 73 Cal. App. 2d at 26 (*in pari delicto* bars claims by plaintiffs who "voluntarily engage[d] in a gambling game"); *Kelly*, 72 Cal. App. 4th at 490.

Plaintiffs cannot escape this conclusion by attacking PrizePicks' asserted misrepresentations about the legality of its contests. Although that argument also fails on its merits (as described below), both *Kelly* and *Wallace* bar claims involving fraudulent or deceptive conduct in connection with asserted gambling losses. Here, Plaintiffs' misrepresentation theory necessarily depends upon the premise that they played a game that they assert constitutes unlawful gambling because PrizePicks "trick[ed]" them into thinking it was legal. Compl. ¶ 171. As in *Wallace*,

---

material" only in that circumstance). In any event, the Attorney General's opinion it attaches is improper, misguided, and irrelevant to this motion—and PrizePicks will address it in due course.

though, Plaintiffs "[can] not prove the alleged fraud and deceit" "without evidence showing that the fraud was exercised incident to [their] participation in" the alleged gambling. 73 Cal. App. 2d at 26. Thus, Plaintiffs' suit cannot proceed under either theory.

In *Strickland v. Bicycle Casino, Inc.*, the California Court of Appeal rejected similar claims as presented here. 2012 WL 3756980 (Cal. Ct. App. Aug. 30, 2012).[4] In that case it affirmed dismissal with prejudice of claims, including under the UCL, asserting that the operator of a poker tournament misrepresented the terms of entry. *Id.* at *1, 4. The court rejected the plaintiffs' contention "that *Kelly* is inapplicable" because defendants allegedly asserted "a 'business'[s] improper breach of contract and advertising fraud.'" *Id.* at *3. And it rejected the plaintiffs' argument that they should be allowed to amend to add false advertising claims because, "to the extent that each of these theories is premised on a gambling transaction, they are [also] foreclosed by *Kelly*." *Id.* at *3–4. Plaintiffs' claims are similarly barred here.

Federal courts applying California law have also repeatedly dismissed similar claims. For example, *Alves v. Players Edge, Inc.*, 2007 WL 6004919, at *14 (S.D. Cal. Aug. 8, 2007), dismissed claims alleging a violation of the UCL and deceptive advertising against an alleged sports betting service under *Kelly*. Likewise, in *Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650, at *1 (C.D. Cal. May 24, 2023), the plaintiffs brought a putative class action asserting a claim for restitution under the UCL against the operator of a mobile game that allegedly "violate[d] California's gambling laws." The court rejected the plaintiffs' "attempts to distinguish *Kelly* on the basis that they are victims of Defendants' fraud and unknowing participants in illegal gambling" and dismissed "claims for monetary relief [that] are in essence a claim to recover for gambling losses." *Id.* at *4; *see also Mason v. Machine Zone, Inc.*, 140 F. Supp. 3d 457, 466 (D. Md. 2015) (applying *Kelly* to dismiss UCL claim alleging that mobile game constituted illegal gaming).

Plaintiffs' claims here fail under *Kelly* and should be dismissed with prejudice.

---

[4] Federal courts "may consider unpublished state decisions." *Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

1

**B.    Plaintiffs Lack Economic Injury Required for Statutory Standing.**

2

Plaintiffs' claims both fail for the additional reason that they do not plead the required

3

elements of causation and economic injury.  *See* Cal. Bus. & Prof. Code § 17204 (UCL) (requiring

4

loss of money or property as a result of alleged violations); *Meyer v. Sprint Spectrum L.P.*, 45 Cal.

5

4th 634, 641 (2009) ("not only must a [CLRA plaintiff] be exposed to an unlawful practice, but

6

some kind of damage must result").  Plaintiffs obtained exactly what they paid for: entries in

7

PrizePicks' fantasy sports contests.  They now say those contests were illegal, but that does not

8

establish economic injury because Plaintiffs never allege any manipulation or other conduct that

9

hurt Plaintiffs' opportunity to win a prize.

10

For instance, in *Mai v. Supercell Oy*, 2024 WL 2077500, at *1–2 (9th Cir. May 9, 2024),

11

the Ninth Circuit held that two players who purchased "loot boxes" for mystery items within a

12

mobile game lacked standing under the UCL and Article III because they "concede[d] that for each

13

loot box they purchased, they received exactly what they expected: at least one mystery virtual

14

item."  The court rejected any argument that participation in a supposedly illegal transaction itself

15

conferred standing.  *Id*. at *2.  Similarly, *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 825–26,

16

828-29 (C.D. Cal. 2022), held that plaintiffs who bought the opportunity to vote for chef contestants

17

in a competition "received what they bargained for"—votes—and their claim that they "would not

18

have paid for votes if they had known the contest was illegal gambling" did not establish economic

19

injury under either the UCL or RICO, which similarly requires economic injury.  *Cf. also Rodriguez*

20

*v. Topps Co., Inc*., 104 F. Supp. 2d 1224, 1227 (2000) (no RICO standing where plaintiffs received

21

the paid-for "pack of cards which included a bona fide 'chance to win,'" with no allegation of

22

"fraudulent or dishonest conduct such as misrepresenting to purchasers the odds of winning a chase

23

card").  Plaintiffs' claims should be similarly dismissed for lack of economic injury.

24

Plaintiffs therefore also lack standing to pursue injunctive relief.  Plaintiffs' professed desire

25

to someday potentially enter PrizePicks' contests again is insufficient because (1) Plaintiffs can

26

evaluate PrizePicks' future statements without entering into any contests and (2) Plaintiffs'

27

inchoate desires to potentially enter future contests cannot justify an injunction.  *See, e.g.*, *Kenney*

28

*v. Fruit of the Earth, Inc.*, 2024 WL 4578981, at *1 (9th Cir. Oct. 25, 2024).

C.      **PrizePicks' Contests Are Not a "Good" or "Service" under the CLRA.**

The CLRA applies to two types of transactions: the sale or lease to consumers of "goods" or "services," both of which are defined by statute. *See* Cal. Civ. Code §§ 1761, 1770(a). This case could only implicate "services," as PrizePicks sells no "tangible chattels." *Id.* § 1761(a). But the statutory definition is narrow: "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(b). In 2009, the California Supreme Court interpreted this "unambiguous" language, holding that an insurance contract was not a "'service' under the Act" because it "is not work or labor, nor is it related to the sale or repair of any tangible chattel." *Fairbanks*, 46 Cal. 4th at 61.

The same logic applies to PrizePicks, which offers access to fantasy sports contests that have nothing to do with chattels. Although a couple of district courts have declined to follow *Fairbanks* in the context of theme park admissions, that is a minority view and one inconsistent with the rule that this Court must apply "California law as [it] believe[s] the California Supreme Court would apply it"—that is, consistent with *Fairbanks*. *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 924 (9th Cir. 2000); *compare, e.g.*, *Freeman v. Cal. Bank & Tr.*, 2024 WL 2269264, at *4–5 (Cal. Ct. App. May 20, 2024) (applying *Fairbanks* to conclude that "providing and administering deposit accounts" is not a defined "service"), *and Simon v. SeaWorld Parks & Entm't, Inc.*, 2022 WL 1594338, at *7 (S.D. Cal. May 19, 2022) (access to entertainment not a defined service), *with Anderson v. SeaWorld Parks & Entm't, Inc.*, 2016 WL 8929295, at *10–11 (N.D. Cal. Nov. 7, 2016) (declining to follow *Fairbanks*).

D.      **Plaintiffs' Misrepresentation Claims Fail on the Merits.**

Plaintiffs' claims of deception or misrepresentation fail because they do not and cannot identify any false or misleading statements about the legality of PrizePicks' contests—and indeed PrizePicks' actual statements directly rebut Plaintiffs' contentions. Because their allegations sound in fraud, Plaintiffs must satisfy Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) standard applies to CLRA and UCL claims). To survive a motion to dismiss, Plaintiffs must identify material representations that are either literally false or likely to mislead a "normally credulous consumer." *Lavie v. Procter & Gamble Co.*, 105

1  Cal. App. 4th 496, 508 (2003).  They also must allege facts establishing reliance and the loss of

2  money or property as a result of the alleged deceptive statements.  Cal. Civ. Code § 1780(a); Cal.

3  Bus. & Prof. Code § 17204.  Plaintiffs fail to plead a viable claim.

4  **1.    Plaintiffs Have Not Satisfied Rule 9(b) or Pleaded Reliance.**

5  Plaintiffs' Complaint comes nowhere close to satisfying Rule 9(b), which requires them to

6  "state with peculiarity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Plaintiffs

7  reference various statements on PrizePicks' website and allege that it advertises on social media,

8  but they do not "specify when [they] were exposed to" any of these statements, let alone any

9  statement on which they relied or "found material."  *Kearns*, 567 F.3d at 1126 (affirming dismissal

10  of UCL and CLRA claims); Compl. ¶¶ 114-16, 127-29.  Absent specific allegations, Plaintiffs have

11  not satisfied Rule 9(b)'s requirement to plead "who, what, when, where, and how of the misconduct

12  alleged."  *Id.*

13  This failure also means that Plaintiffs lack the required "actual reliance by the [party]

14  seeking relief under" the UCL.  *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235,

15  1257 (2009); *see Tracy Anderson Mind & Body, LLC v. Roup*, 2022 WL 17670418, at *7–8 (C.D.

16  Cal. Dec. 12, 2022) (dismissing UCL claim because plaintiffs "fail[ed] to plead with specificity

17  that they actually relied upon [the] alleged misrepresentations").

18  **2.    Plaintiffs Identify No Statements Giving a Guarantee of Legality.**

19  *a.  Offering a contest to the public is not an assertion of lawfulness.*

20  An independent failure is that the statements the Complaint does identify do not make the

21  representation that Plaintiffs contend.  Plaintiffs rely heavily on conclusory assertions that

22  PrizePicks represented that its fantasy sports contests are "legal" or "lawful" in California.  Compl.

23  ¶¶ 1, 41, 107, 111, 114-16, 119, 122, 127-29, 132, 134, 143, 146, 150-51.  But Plaintiffs identify

24  no actual statement—none—using either word, and their conclusory allegations are disregarded on

25  a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Plaintiffs' claims instead rest on allegations that

26  PrizePicks' contests are "offer[ed]" or "available" in California, or that contestants "can play"

27  contests "in" California.  Compl. ¶¶ 87, 89, 90, 93-95, 96, 99, 100-01.  But stating that contests are

28  "available" or "offer[ed]" in California does not equate to an assertion of lawfulness.  "Available"

- 11 -

1  simply means "present or ready for immediate use," and to "offer" means "to make available."[5]

2  Courts regularly reject claims based on such broad terms that differ from the allegedly false or

3  misleading one upon which the claim is predicated.  *E.g.*, *Hawkins v. Walmart Inc.*, 766 F. Supp.

4  3d 1036, 1043 (E.D. Cal. 2025) (dismissing claims based on asserted representation that "refined

5  Avocado Oil" was "pure"; label "did not contain any such statement," which lacked "any defined

6  meaning" that would mislead).

7        The gravamen of Plaintiffs' theory is that reasonable consumers would conclude that

8  PrizePicks' mere operation in California was effectively an affirmative representation that each

9  contest complied with a range of complex statutory provisions.  But that cannot be right.  An

10  "OPEN" sign is not a representation of lawfulness.  If it were, every business without a proper

11  license or facing some legal problem would be guilty of false advertising the moment it turned on

12  its lights and unlocked the front door.  PrizePicks is unaware of any court interpreting the UCL so

13  broadly, and such a determination here would have sweeping consequences on business operations

14  in the State.

15        Moreover, Plaintiffs' argument of some *implied* representation about legality is destroyed

16  by the *explicit* disclaimer in the Terms of Service that all contestants must agree to as a condition

17  to creating an account.  That disclaimer states that PrizePicks does ***not*** represent that its contests

18  are legal.  Section 21 of the Terms of Service specifically states: "PrizePicks ***does not warrant that***

19  ***your activities or use of the Site or App is lawful*** in any particular jurisdiction and, in any event,

20  PrizePicks specifically disclaims such warranties. ***You understand that by using any of the***

21  ***features of the Site or App, you act at your own risk***, and you represent and warrant that your

22  activities are lawful in every jurisdiction where you access or use the Site or App or the content."

23  TOS, § 21 (emphasis added).  That disclaimer is "readily available" and "could easily resolve the

24  alleged ambiguity," "dissuad[ing] a reasonable consumer" from assuming that PrizePicks was

25  making any guarantee or warranty about its contests' legal status in California.  *Moore v. Trader*

26  *Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

27

28        [5] Merrian-Webster Dictionary: *Available*, https://www.merriam-webster.com/dictionary/
    available; *Offer*, https://www.merriamwebster.com/dictionary/offer.

1           *b.   Plaintiffs' remaining arguments ignore the reasonable consumer standard.*

2           Plaintiffs' allegations about other statements (again, untethered to Plaintiffs' own exposure

3   or decisionmaking) ignore not only that express disclaimer but also the critical context that

4   PrizePicks operates a single website and app to serve contestants in multiple states.  *See Freeman*

5   *v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (false advertising claim was properly dismissed

6   where the statement made no misrepresentation "when read reasonably and in context").   For

7   instance, Plaintiffs point to a mobile app FAQ page stating that contestants "will need to follow the

8   rules of the region where [they] are physically located while accessing the app," *id.* ¶ 110—that is,

9   contestants must follow *PrizePicks*' contest rules that apply in their particular jurisdiction.  *See also*

10  *id.* ¶ 102 (alleging that PrizePicks will not allow access if a user blocks location).  Plaintiffs never

11  explain how an FAQ noting the *contestant's* obligation to follow rules could possibly be read as a

12  broad guarantee of *PrizePicks*' legal compliance.

13          Similar flaws exist in Plaintiffs' reliance on PrizePicks' statements that contestants must

14  provide personal information so that PrizePicks can "ensure that you meet state mandated age and

15  location requirements governing daily fantasy sports" and "authenticate your identity, comply with

16  applicable laws, and protect PrizePicks and its players from fraud and bad actors[.]" *Id.* ¶¶ 108-09.

17  These statements do not mention California at all, let alone gambling laws.  Rather, they focus on

18  fraud prevention and data privacy, as well as addressing states like New York that impose age limits

19  on "interactive fantasy sports contests" and require operators to implement and explain "the steps

20  taken to prevent" minors' participation, including through "age verification procedures."  N.Y.

21  Comp. Codes R. & Regs., tit. 9, § 5604.1; *see also, e.g.*, Ariz. Rev. Stat. § 5-1205(A) (setting age

22  limit); Ariz. Admin. Code § R19-4-216 (requiring age and identity verifications).

23          Plaintiffs' claims speculate about the mental state of a caricature consumer, who reads every

24  sentence of fine print on PrizePicks' website ***except*** the Terms of Service and draws unfounded

25  assumptions from isolated words thereon—and not only ignores express disclaimers, but also lacks

26  any contextual knowledge about the potential illegality of what Plaintiffs call "gambling" and fails

27  to consult other easily accessible sources to verify those assumptions.  But Plaintiffs must establish

28  that "it is probable that ***a significant portion of the general consuming public or of targeted***

- 13 -

1    **consumers, *acting reasonably in the circumstances*** could be misled." *Lavie*, 105 Cal. App. 4th at

2    508 (emphasis added).  Plaintiffs' fictional consumer in no way meets that standard.

3         Plaintiffs allege that California has "broadly prohibited commercialized gambling" for over

4    a century and that in 2022—while Plaintiffs were both using PrizePicks—Californians voted on

5    two propositions related to sports betting and watched some $150 million in related political ads.

6    Compl. ¶¶ 14, 27-32, 127, 129.  Based on Plaintiffs' own allegations, any reasonable consumer to

7    whom legality was a material consideration would understand that PrizePicks' contests might have

8    an uncertain legal status—and indeed, target consumers would be ***more*** likely to have such

9    awareness.  *Cf. Moore*, 4 F.4th at 883–84 (reasoning that consumers of high-end food product

10   would "not understand" the defendant to be "promising something that is impossible" and would

11   "likely know more" than the average consumer about the product).  Those consumers had an easy

12   and straightforward answer to any question about whether PrizePicks was offering a warranty of

13   legality: read what PrizePicks actually said.  No, PrizePicks did "not warrant that [their] activities

14   or use of the Site or App is lawful."  TOS § 21; *see Moore*, 4 F.4th at 882 ("information available

15   to a consumer is not limited to the physical label and may involve contextual inferences").

16        **E.    Plaintiffs' Adequate Remedy at Law Bars Their Equitable Claims.**

17        Plaintiffs strategically chose to seek only equitable relief to try to evade their agreement to

18   arbitrate with PrizePicks.  But their strategy is too clever by half.  Federal courts reject equitable

19   claims where, as here, plaintiffs cannot (and do not) allege that they lack an adequate remedy at

20   law.  Plaintiffs should bear the consequence of their strategy.

21        In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), the Ninth Circuit

22   confirmed that equitable recovery is barred when a plaintiff has an adequate remedy at law.  In

23   *Sonner*, a plaintiff brought false advertising claims against the product manufacturer, seeking

24   equitable restitution under California's UCL and CLRA.  *Id.* at 837–38.  Under "traditional

25   principles governing equitable remedies in federal courts," the Ninth Circuit held that the plaintiff

26   "must establish that she lacks an adequate remedy at law before securing equitable restitution for

27   past harm[.]"  *Id.* at 844.  The court affirmed the dismissal of the plaintiff's claims because she

28   (1) "[did] not allege that [she] lacks an adequate legal remedy" and (2) sought the exact sum that

1   could have been claimed in legal damages. *Id.* The Ninth Circuit has repeatedly confirmed

2   *Sonner*'s holding. *See, e.g.*, *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022); *In*

3   *re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2022).

4        Like in *Sonner*, Plaintiffs seek equitable restitution under the UCL and CLRA and no legal

5   remedy. *See* Compl. ¶ 185. Also as in *Sonner*, Plaintiffs fail to even plead that they lack an

6   adequate remedy at law, much less allege facts that would so establish. *See* 971 F.3d at 844. And

7   that is because—again, just like *Sonner*—Plaintiffs **cannot** establish that they lack an adequate

8   legal remedy. Plaintiffs seek "all amounts paid to PrizePicks by Plaintiffs and the Class" "and/or

9   the total of net losses" from participation in PrizePicks' contests, Compl. ¶ 173—all amounts they

10  could have claimed as damages under the exact same statute (CLRA). Nor have Plaintiffs alleged

11  future irreparable harm for which damages would be an inadequate remedy. *See, e.g.*, *Clark v. Am.*

12  *Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121–22 (C.D. Cal. 2021) (dismissing UCL and CLRA

13  claims in toto, including injunctive relief, because plaintiffs failed to plead lack of an adequate

14  remedy at law); *Watkins v. MGA Entm't*, 550 F. Supp. 3d 815, 837–38 (N.D. Cal. 2021) (same).

15       For purposes of this analysis, it does not matter whether the underlying legal claim would

16  have succeeded. For example, in *Guzman*, the plaintiff asserted a UCL claim because a claim for

17  legal damages under the CLRA would have been time-barred. 49 F.4th at 1312. The Ninth Circuit

18  held that the plaintiff "had an adequate remedy at law through his CLRA claim for damages, even

19  though he could no longer pursue it, and that the district court was therefore required to dismiss his

20  equitable UCL claim." *Id.*; *see also Smith v. United Seating & Mobility*, 2024 WL 4441082, *5

21  (C.D. Cal. Sept. 11, 2024) (same). Thus, while an ordinary fraud or CLRA claim for legal damages

22  would still be barred under the *Kelly* doctrine, that does not mean that Plaintiffs' legal remedies are

23  "inadequate." Plaintiffs' claims should be dismissed.

24  **V.   CONCLUSION**

25       For the foregoing reasons, the Court should dismiss both claims in Plaintiffs' complaint

26  with prejudice. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (dismissal

27  with prejudice proper where amendment would not cure defects).

28

1    Dated: August 18, 2025                    Respectfully submitted,

2                                              By: _/s/ David Marroso_____

3                                                  David Marroso

4                                              **O'MELVENY & MYERS LLP**
                                               1999 Avenue of the Stars, 8th Floor
5                                              Los Angeles, California  90067-6035
                                               Telephone: +1 310 553 6700
6                                              Facsimile: +1 310 246 6779

7                                              **FROST LLP**
                                               10960 Wilshire Boulevard, Suite 2100
8                                              Los Angeles, California 90024
                                               Telephone: (424) 254-0441
9                                              Facsimile: (424) 600-8504

10                                             *Attorneys for Defendant PrizePicks*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT PRIZEPICKS' MOTION TO DISMISS -- NO. 3:25-CV-04916-CRB